MADISON BEAUTY SUPPLY, LTD., a Wisconsin corporation, Plaintiff-Respondent,†

v.

HELENE CURTIS, INC., an Illinois Corporation and Attractions, Inc., an Illinois Corporation, Defendants-Appellants,

MARSHALL SUPPLY CO., an Illinois Corporation, Ben Valenza, Matthew Mitchell, John Wahl, David Garde, James K. Olson, and Glenn Greig, Defendants.

Court of Appeals

*No. 91-2498. Submitted for summary disposition January 8, 1992.—Decided February 13, 1992.*

(Also reported in 481 N.W.2d 644.)

†Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Kim Grimmer, Steven J. Kirschner* and *Don M. Millis* of *Ross & Stevens, S.C.* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Earl H. Munson, Richard M. Burn-*

*ham, Thomas H. Taylor* and *Eugenia G. Carter* of *La Follette & Sinykin* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J.   Helene Curtis, Inc., and Attractions, Inc.[1] (Curtis/Attractions), appeal from an order entered October 10, 1991, denying their motion for a stay of this action and granting in part Madison Beauty Supply, Ltd.'s (MBS) motion to stay Curtis/Attractions' claim for arbitration pending further proceedings in this action.[2] We reverse the order and remand for further proceedings.

MBS began this action against Curtis/Attractions, Marshall Supply Co. (Marshall) and six individuals who formerly worked for MBS and later accepted employment with Marshall. MBS's complaint alleges three causes of action:

1.   A claim against Curtis/Attractions for violating, and against the other defendants for conspiring to violate, the Wisconsin Fair Dealership Law;

---

[1]Attractions, Inc. is an Illinois corporation owned by Helene Curtis, Inc. In this opinion, "Curtis/Attractions" includes Helene Curtis, Inc. and Attractions, Inc.

[2]We granted Curtis/Attractions' petition for leave to appeal from the circuit court's order. We also partially granted its motion for a stay of further judicial proceedings between MBS and Curtis/Attractions. On December 26, 1991, we denied MBS's motion to modify our November 21, 1991 order. We stated: "By granting the petition for temporary relief, we limited our stay to litigation of MBS's Wisconsin Fair Dealership Law claims against Curtis/Attractions." On January 9, 1992, MBS moved this court to clarify our order of November 21, 1991. On January 31, 1992, MBS moved this court to lift the partial stay imposed by our order of November 21. These motions are mooted by our decision herein.

2. A claim against all defendants for wrongful and intentional interference with business relations; and

3. A claim against all defendants for combining to injure the business and reputation of MBS, contrary to sec. 134.01, Stats.

Curtis/Attractions and MBS were parties to a Distribution Agreement. On March 20, 1991, Curtis/Attractions terminated the relationship between Curtis/Attractions and MBS. From that date through the end of March, the six individual defendants, all of whom were route salesmen for MBS, terminated their employment with MBS. They were subsequently employed by Marshall. Curtis/Attractions contracted with Marshall for the exclusive distribution in Wisconsin of certain of its products which had been distributed by MBS.

The agreement between Curtis/Attractions and MBS provided that,

> all disputes and controversies of any kind arising out of or in connection with this Agreement, whether relating to its construction, validity, meaning, performance or non-performance thereof, shall be submitted to and finally settled by arbitration. Any such arbitration shall be conducted in accordance with the rules of the American Arbitration Association and shall take place in Chicago, Illinois.

Section 19, Distribution Agreement.

Curtis/Attractions and Marshall moved the circuit court for an order pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3, staying MBS's action pending arbitration under the contract. Curtis/Attractions initiated arbitration by the American Arbitration Association. On July 8, 1991, MBS moved the circuit court to stay the arbitration demanded by Curtis/Attractions.

240

On October 10, 1991, the circuit court (1) denied Curtis/Attractions' and Marshall's motions for a stay of this action, (2) allowed discovery to proceed, and (3) granted MBS's motion that Curtis/Attractions be stayed from proceeding with arbitration until the court determined whether the relationship between MBS and Curtis/Attractions constituted a dealership under the Wisconsin Fair Dealership Law (WFDL), ch. 135, Stats.

We conclude that MBS's claims against Curtis/Attractions include "disputes and controversies . . . arising out of or in connection with [the] Agreement" between Curtis/Attractions and MBS. Therefore, as provided by the Agreement, these claims "shall be submitted to and finally settled by arbitration." We further conclude that the circuit court may, in the interest of judicial economy, stay all proceedings before it pending a final determination of the issues submitted to arbitration. We do not hold that the issues between MBS and any defendants other than Curtis/Attractions are subject to arbitration. Nor do we direct the issues to be submitted to the arbitrator. Subject to these directions, we reverse the order of October 10, 1991, and remand the cause for further proceedings.

MBS argues that secs. 135.05 and 135.025(3), Stats., require that this case be tried in a judicial forum. We conclude that these provisions of the WFDL are preempted by the Federal Arbitration Act (FAA). Section 135.05, Stats., provides:

> This chapter shall not apply to provisions for the binding arbitration of disputes contained in a dealership agreement concerning the items covered in s. 135.03, if the criteria for determining whether good cause existed for a termination, cancellation, nonrenewal or substantial change of competitive circum-

stances, and the relief provided is no less than that provided for in this chapter.

Section 135.025(3), Stats., provides:

> The effect of this chapter may not be varied by contract or agreement. Any contract or agreement purporting to do so is void and unenforceable to that extent only.

MBS argues that these provisions void the arbitration clause in the Distribution Agreement because the provision does not provide for the relief guaranteed Wisconsin dealers under ch. 135, Stats. MBS's argument would be persuasive if it were not clearly established that the FAA preempts contrary provisions of ch. 135. Section 2 of the FAA provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

9 U.S.C. § 2.

It is undisputed that the Distribution Agreement evidences a transaction involving commerce. MBS does not claim that grounds exist at law or in equity for revocation of the arbitration clause of the Agreement, other than the grounds provided by the WFDL, which we have concluded are preempted by the FAA. In *Southland Corp. v. Keating,* 465 U.S. 1, 11 (1984), the Court said: "We see nothing in the [Federal Arbitration] Act indicating that the broad principle of enforceability is subject to any additional limitations under state law." In

*Southland,* the Court also said: "In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 16 (footnotes omitted).

In *Good(E) Business Systems, Inc. v. Raytheon Co.,* 614 F. Supp. 428, 431 (W.D. Wis. 1985) the court stated:

> Wis. Stats. Ch. 135 purports to require judicial resolution of some fair dealership claims despite the parties' agreement to arbitrate. It thus purports to exercise a power that the state no longer has. . . . [T]he *[Southland]* Court has held in effect that federal law governing the arbitrability of commercial contracts entirely displaces state regulation of the field. States simply lack the power to enact limits on the arbitrability of commercial contracts that go beyond those contained in 9 U.S.C. § 2.
>
> I conclude that the provisions of Wis. Stats. Ch. 135 that purport to limit the arbitrability of fair dealership claims involving agreements otherwise within the scope of 9 U.S.C. § 2 conflict with federal law and are therefore preempted under the Supremacy Clause, U.S. Const. art. VI. [Citations omitted.]

In *Southland,* the Court said: "We . . . read the underlying issue of arbitrability to be a question of substantive federal law: 'Federal law in the terms of the Arbitration Act governs that issue in either state or federal court.' " 465 U.S. at 12 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). Thus, *Good(E) Business Systems* is binding on this court.

■

We conclude therefore that whether the Distribution Agreement is a dealership contract does not determine arbitrability. Whether a dispute or controversy

243

between MBS and Curtis/Attractions is subject to arbitration depends on whether it "[arose] out of or in connection with [the Distribution] Agreement . . .." The determination of that question is for the circuit court in the first instance, under sec. 788.02, Stats.,[3] subject, of course, to appellate review.

We next consider whether the circuit court erred in denying Curtis/Attractions' motion for a stay of the action pending arbitration. Curtis/Attractions contend that § 3 of the FAA mandates that in any action where any issue is referable to arbitration, the court must stay the entire action pending arbitration. We conclude that § 3 of the FAA does not apply in state court. We further conclude that the arbitration clause in the Distribution Agreement is enforceable under ch. 788, Stats.

The United States Supreme Court has never held that section 3 of the FAA applies in state court. *Volt Info. Sciences v. Stanford Univ.*, 489 U.S. 468, 477 n.6 (1989). Once Congress's goal of insuring that a private arbitration agreement is enforced according to its terms is satisfied, the procedure for enforcing the parties' agreement to arbitrate may be chosen by the parties. *Id.* at 476. "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Id.*

---

[3]Section 788.02, Stats., provides:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

We conclude that the parties have chosen ch. 788, Stats., as the procedure for enforcing their agreement to arbitrate. We recognize that sec. 24 of the Distribution Agreement provides that the agreement "shall be construed in accordance with the law of the State of Illinois." However, we conclude that by this clause, the parties did not intend to adopt the Illinois statutory procedures for enforcement of their agreement to arbitrate. The choice-of-law clause controls only the construction of the Agreement. We consider that by proceeding in a Wisconsin circuit court under ch. 788, the parties have elected that the procedures of that chapter shall govern the enforcement of the arbitration clause in their agreement.

Curtis/Attractions argue that sec. 788.02, Stats., requires that the circuit court stay this action pending arbitration. Section 788.02 is identical in language to § 3 of the FAA. Curtis/Attractions suggest that we should look to federal decisions construing § 3 of the FAA in interpreting sec. 788.02. *See Milwaukee Police Ass'n v. City of Milwaukee,* 92 Wis. 2d 145, 164, 285 N.W.2d 119, 128 (1979) (federal decisions construing federal code provisions substantially identical to provisions of state arbitration statutes are persuasive). Curtis/Attractions argue that these decisions require that the trial court stay the entire action when any issue in the action is referable to arbitration. This argument is answered contrary to Curtis/Attractions' position by *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 20 n.23 (1983) (citing *Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936)), where the Court said that the decision whether to stay litigation among nonarbitrating parties is left to the trial court as a matter of discretion to

245

control its docket. The same logic applies to nonarbitrable issues between arbitrating parties.

Also, the Wisconsin Supreme Court in *City of Madison v. Frank Lloyd Wright Foundation,* 20 Wis. 2d 361, 393–94, 122 N.W.2d 409, 426 (1963), held that the trial court had the power under what is now sec. 788.02, Stats., to stay the city's action for declaratory relief until arbitration proceedings under the contract between the parties were resolved.

We conclude that the circuit court may stay MBS's action as to any claim which it concludes is not referable to arbitration, if it determines that judicial economy would be furthered by such stay.

*By the Court.*—Order reversed and cause remanded for further proceedings.