MADISON TEACHERS, INC., Petitioner-Appellant,

v.

WISCONSIN EDUCATION ASSOCIATION COUNCIL,
Respondent-Respondent.

Court of Appeals

*No. 2004AP1053. Submitted on briefs April 5, 2005.
—Decided July 6, 2005.*

2005 WI App 180

(Also reported in 703 N.W.2d 711.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Lester A. Pines* and *Tamara B. Packard* of *Cullen Weston Pines & Bach LLP*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Steven A. Heinzen* and *Brady C. Williamson* of *La Follette Godfrey & Kahn*, Madison.

Before Wedemeyer, P.J., Fine and Kessler, JJ.

¶ 1. WEDEMEYER, P.J. Madison Teachers, Inc. ("Teachers") appeals from an order dismissing its petition filed under Wis. Stat. § 788.03 (2003–04)[1] seeking to compel the Wisconsin Education Association Council ("State Council") to arbitrate a dispute arising from a 1978 Agreement, which governed the relationship between the two organizations and the National Education Association ("National Association").[2] The Teach-

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted. WISCONSIN STAT. § 788.03 provides:

> The party aggrieved by the alleged failure, neglect or refusal of another to perform under a written agreement for arbitration may petition any court of record having jurisdiction of the parties or of the property for an order directing that such arbitration proceed as provided for in such agreement. Five days notice in writing of such application shall be served upon the party in default. Service thereof shall be made as provided by law for the service of a summons. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure, neglect or refusal to perform the same is in issue, the court shall proceed summarily to the trial thereof. If no jury trial is demanded, the court shall hear and determine such issue. Where such an issue is raised, either party may, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue to a jury summoned and selected under s. 756.06. If the jury finds that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury finds that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

[2] Madison Teachers is the local union, which represents five bargaining units and some 5,000 employees of the Madison

ers contend the trial court erred in ruling that "the named arbitrator was essential to the arbitration agreement and because he was unable to serve, the court could not fill the vacancy and the parties' dispute could not be arbitrated." Because we conclude that the trial court erred in ruling that the inability of the named arbitrator to participate, in essence, voided the dispute resolution provision of the Agreement, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. In September 1978, the Teachers, the State Council, and the National Association entered into an affiliation Agreement. The Agreement set forth the expectations of each party with regard to the Teachers' affiliation with the State Council and the National Association. The Agreement did not specify a termination date, but rather indicated that the Agreement "shall continue in full force and effect and be binding upon the parties hereto . . . unless either party enters into organizational activity which is injurious to the well being of the other."

¶ 3. On or about February 18, 2001,[3] the State Council purported to terminate the Agreement, claiming that the Teachers had engaged in "organizational activity that was injurious" to the State Council. The Teachers responded that this dispute would have to be

Metropolitan School District. The State Council constitutes the state-wide teacher's union, which assists the local unions that are affiliated with it. The National Association constitutes the national teacher's union, which assists the local and state unions that are affiliated with it.

[3] Sometimes this date is referred to as 2000, but it appears from our review that 2001 is the correct date.

resolved pursuant to the Agreement's dispute resolution provision. That provision provided:

D) *Dispute Resolution*

As a demonstration of their will to make the relationship work well and effectively, the parties hereto agree to the following expedited method of resolving all disputes which arise over the interpretation or application of the Agreement.

a. Professor Ronald W. Haughton is hereby mutually agreed upon by the parties to have final and binding authority to decide any disputes between the parties over the interpretation or application of this Agreement.

b. Professor Haughton will meet the parties at an agreed upon location and time whenever there are pending disputes upon which he is requested to rule.

c. After hearing the positions of the parties, with witnesses if they so opt, Professor Haughton will issue a prompt decision in writing to the parties. The effort will be to issue the decision on the day the grievance is heard. Such decision will be postmarked not later than seven days following the hearing at which the grievance is presented.

d. Professor Haughton's expenses in actions stemming from the above, will be paid in full by [the National Association]. In actions relative to the "UniServ" . . . .

¶ 4. The State Council refused to participate in the dispute resolution process based on its belief that it had terminated the Agreement and that such action was not subject to the Agreement's dispute resolution provisions. As a result, the Teachers filed a petition in

the circuit court pursuant to Wis. Stat. §§ 788.03 and 788.04, requesting that the court order the State Council to arbitrate the dispute. The petition also asked the court to appoint a new arbitrator because the arbitrator named in the Agreement, Professor Haughton, was not available due to age and/or infirmity. The State Council responded to the Teachers' petition, claiming that the unavailability of Professor Haughton essentially voided the dispute resolution provision of the Agreement, that the Agreement was void because the requirements contained therein were too vague to lead to any enforceable duties, that it had successfully terminated the Agreement, and that such termination action was not subject to arbitration under the Agreement. The trial court ruled that the State Council's latter three arguments each involved a dispute over "whether the agreement itself is enforceable in any of its terms." Citing the language in the Agreement that the parties had agreed to arbitrate "all disputes which arise over the interpretation or application of the Agreement," the trial court concluded that the latter three issues should be subject to arbitration under the Agreement. That decision has not been appealed.[4]

¶ 5. The trial court, however, further concluded that the specifically named arbitrator, Professor Haughton, was "central to the agreement" and that utilizing him as the arbitrator was a condition precedent to arbitrating disputes between the parties. In other words, without Professor Haughton's participation as arbitrator, there can be no arbitration. Based on this decision, the trial court entered an order dismissing the petition. The Teachers appeal from that order.

[4] Thus, the only issue before this court is whether the arbitration provision should be enforced pursuant to chapter 788 of the Wisconsin Statutes.

## DISCUSSION

¶ 6. The issue in this case is whether the trial court erred in ruling that the unavailability of the arbitrator, identified by name in the Agreement, resulted in a dissolution of the arbitration provision of the Agreement. We conclude that the primary purpose of the dispute resolution provision in the Agreement was to arbitrate disputes that arose between the parties; thus, the unavailability of the named arbitrator does not nullify the arbitration provision.

¶ 7. This case arises following the trial court's dismissal of the Teachers' petition on the pleadings. A motion for judgment on the pleadings is essentially a motion for summary judgment without affidavits. *See Jares v. Ullrich*, 2003 WI App 156, ¶ 8, 266 Wis. 2d 322, 667 N.W.2d 843; Wis. Stat. § 802.08(2). Our review in this case involves a variety of legal issues, which are reviewed independently from the trial court. *See Strassman v. Muranyi*, 225 Wis. 2d 784, 787, 594 N.W.2d 398 (Ct. App. 1999).

¶ 8. It is undisputed that Professor Haughton was identified as the permanent arbitrator in the Agreement. It is also undisputed that since 1978 until the time that the current dispute arose, Professor Haughton arbitrated all disputes that arose between the parties. It is further undisputed that Professor Haughton, due to age or infirmity, was unavailable to act as arbitrator between the parties to resolve their current dispute. When the current dispute arose, the Teachers requested that the State Council submit to arbitration and suggested that because of Professor Haughton's

744

unavailability, the parties select another mutually agreed-to arbitrator. The State Council refused to do either.

¶ 9. The role then for this court is to analyze the facts and the law in this case to determine whether the arbitration clause is enforceable in light of Professor Haughton's absence. In doing so, we note that the policy in this state is to "promote arbitration as a viable and valuable form of alternative dispute resolution." *Maryland Cas. Co. v. Seidenspinner*, 181 Wis. 2d 950, 955, 512 N.W.2d 186 (Ct. App. 1994). There is, in fact, a presumption in favor of arbitrability. *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 362 (D.C. 2005); *City of Madison v. Wisconsin Employment Relations Comm'n*, 2003 WI 52, ¶ 20, 261 Wis. 2d 423, 662 N.W.2d 318.[5]

¶ 10. The general rule under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and, therefore, also under

---

[5] The dissent raises some question about the choice of law provision contained within the Agreement. The Agreement states that it "shall be governed by, and all of its provisions construed in accordance with, the laws of the District of Columbia." This issue was raised and briefed in the court below, although not directly addressed in the ultimate decision. It can be inferred from the trial court's citations within its written decision that it followed the parties' apparent agreement that the procedural law of the place of enforcement applies, even though the contract exercises its choice to have the substantive law of another state applied. *See Marten Transp., Ltd. v. Rural Mut. Ins. Co.*, 198 Wis. 2d 738, 746, 543 N.W.2d 541 (Ct. App. 1995); *Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.*, 858 A.2d 457, 463 (D.C. 2004). Thus, we apply Wisconsin law to the procedural questions, and District of Columbia law to the substantive issues.

745

the Wisconsin Arbitration Act, WIS. STAT. § 788.01 *et seq.*, which is patterned after the federal act, indicates that: "[W]here the arbitrator named in the arbitration agreement cannot or will not arbitrate the dispute, a court does not void the agreement but instead appoints a different arbitrator." *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991). This rule is qualified, however, when it appears that the named arbitrator is central to the arbitration agreement. *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990). In other words, if the agreement makes clear that arbitration was only acceptable to the parties *on the specific condition* that a particular individual arbitrator is utilized, then the unavailability of that person results in nullification of the entire arbitration provision. *Id.* The question here, then, is whether having Professor Haughton arbitrate this dispute was "as important a consideration as the agreement to arbitrate itself." *See id.*

¶ 11. Clearly, the arbitration provision under the Agreement specifically names Professor Haughton. The Agreement, however, does not state that if he is unavailable, the parties will not arbitrate disputes. It does not indicate that using Professor Haughton is a condition precedent that must be satisfied in order to engage in arbitration. In fact, the Agreement does not indicate any expectation as to what will happen if Professor Haughton is not available to serve as arbitrator.[6] It appears that the parties either overlooked this eventu-

---

[6] Professor Haughton, who helped the parties reach the 1978 Agreement, submitted an affidavit in support of the Teachers' position. Professor Haughton attested that the essence of the dispute resolution provision of the 1978 Agreement was a commitment by the Teachers and the State Council to

ality or simply chose to ignore it. "Where parties to a contract fail to foresee a situation that later arises and thus have no expectations with respect to that situation, the court may determine the parties' respective rights and duties under the contract." *Stahl v. Sentry Ins.*, 180 Wis. 2d 299, 306, 509 N.W.2d 320 (Ct. App. 1993).

¶ 12. We start with the presumption that the primary purpose of this Agreement was to arbitrate any and all disputes, which arose between the parties that were covered under the Agreement.[7] *See Meshel*, 869 A.2d at 362, *City of Madison*, 261 Wis. 2d 423, ¶ 20. When one particular term of an arbitration agreement has failed, we look to the intent of the parties at the time the agreement was entered to determine whether a substituted term should be inserted or whether the agreement will fail altogether. *See National Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 333 (5th Cir. 1987); *Chattanooga Mailers Union v. Chattanooga News-Free Press Co.*, 524 F.2d 1305, 1315 (6th Cir. 1975)

---

resolve their disputes through arbitration and that Professor Haughton was not a condition precedent required for the arbitration.

[7] The record also demonstrates that Professor Haughton captioned his decision resolving the parties' 1993 dispute as "In the Matter of the Arbitration between . . . ." He also referred to himself within this written decision as the "undersigned arbitrator." These references refute the dissent's suggestion that the Agreement did not constitute an "arbitration agreement." *See also, McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988) (stating that the absence of the word "arbitration" in a contract is "irrelevant" under the federal arbitration act where the parties clearly intended to submit disputes to a neutral third party for definitive resolution).

747

("Even though the arbitration procedures . . . are no longer in existence, the obvious intent of the parties was to arbitrate their difference and that intent should not be frustrated."), *overruled on other grounds, Bacashihua v. U.S. Postal Serv.*, 859 F.2d 402 (6th Cir. 1988).

¶ 13. In order to ascertain that intent, we look to the language of the Agreement and the surrounding circumstances. *See Chattanooga*, 524 F.2d at 1315. The language of the Agreement identifies Professor Haughton by name, which does support the State Council's argument that the professor was an important part of the Agreement. The language also indicates, however, that the parties wanted prompt resolution of their disputes—with a decision made "not later than seven days following the hearing." Quick resolution is one of the advantages to arbitration, yet rarely available from litigation. In addition, there is no language specifically stating that if Professor Haughton is not available, then the parties prefer to take their disputes to the courthouse.

¶ 14. The surrounding circumstances also suggest that arbitration by a neutral party was the central factor to these parties. This is evidenced by the history they shared, including that every dispute up until the current one, was submitted to arbitration for resolution. Moreover, one year after this Agreement was signed, the parties were informed that Professor Haughton could not serve as permanent arbitrator any longer because of a federal appointment. Despite Haughton's unavailability due to this appointment, neither party sought dissolution of the dispute resolution provision. When a dispute arose between the parties, they sought the assistance of the National

Association. The National Association began a search for a third party. It happened to be that Professor Haughton again became available. Although the parties were not aware at that time whether Professor Haughton was available, each was still committed to resolving the dispute through the use of a neutral third person pursuant to the 1978 Agreement. The history between these parties demonstrates that arbitration was the overriding consideration, rather than the existence of a specifically named arbitrator.[8] There is nothing in the Agreement or the parties' conduct over the last twenty-five years to suggest that Professor Haughton personally was more important than the arbitration process itself. The circumstances clearly demonstrate that the parties' chosen preference was resolution of disputes by a neutral party without having to engage in litigation.[9]

---

[8] This court also finds significant the fact that the State Council admitted in its response to the Teachers' petition, that "on or about February 18, 200[1], Wisconsin Education Association Council . . . terminated the [Agreement]." If, in fact, Professor Haughton was a condition precedent to the validity of the Agreement, then the Agreement should have become null and void in 1979, when he notified the parties that he had received a federal appointment. At that time, the State Council took no action to terminate the Agreement. Rather, it continued to act as though the 1979 Agreement was in full force and effect. Thus, its admission that it did not terminate the Agreement until 2001 is significant.

[9] This purpose is further evidenced by the petition filed in this case. The Teachers have come to the courts to attempt to compel arbitration. Arbitration is the central focus of this lawsuit. They have not alleged breach of contract or sought damages resulting from any alleged breaches. Likewise, the State Council did not seek relief from the court system when disputes arose during the past twenty-five years. Rather, it chose to resolve all disputes by arbitration.

¶ 15. Based on the foregoing, we conclude that the trial court erred in ruling that Professor Haughton's ability to act as arbitrator was central to the Agreement and that without him no arbitration could take place. We hold that the essence of the dispute resolution provision was to arbitrate all disputes before a neutral and objective third party without having to rush to the courthouse. Accordingly, we reverse the order of the trial court and remand with directions that the trial court enter an order compelling the State Council to participate in arbitration. We also direct the trial court to afford the parties an opportunity to select a mutually agreed-to arbitrator within a reasonable period of time. If no agreement can be reached, then the trial court is directed to appoint an arbitrator pursuant to WIS. STAT. § 788.04(1).[10]

*By the Court.*—Order reversed and cause remanded.

¶ 16. FINE, J. (*dissenting*).

> As I was going up the stair
> I met a man who wasn't there.

---

[10] WISCONSIN STAT. § 788.04(1) provides:

If, in the agreement, provision is made for a method of naming or appointing an arbitrator or arbitrators or an umpire that method shall be followed. If no method is provided in the agreement, or if a method is provided and any party thereto fails to make use of the method, or if for any other reason there is a lapse in the naming of an arbitrator or arbitrators or an umpire, or in filling a vacancy, then upon the application of either party to the controversy, the court specified in s. 788.02 or the circuit court for the county in which the arbitration is to be held shall designate and appoint an arbitrator, arbitrators or umpire, as the case or sub. (2) may require, who shall act under the agreement with the same force and effect as if specifically named in the agreement; and, except as provided in sub. (2) or unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator.

He wasn't there again today.
I wish, I wish he'd stay away.

JOHN BARTLETT, FAMILIAR QUOTATIONS 756 (15th ed. 1980), attributes the verse to Hughes Mearns. Perhaps the Wisconsin Education Association Council feels the same way about "arbitration." The Majority uses the word "arbitration" forty-three times, "arbitrator" thirty-one times, "arbitrate" twelve times, and "arbitrating" once. Yet, none of these words appears in the Agreement it purports to interpret and apply. To reframe Mearns's verse from the Council's point of view:

As we were going into court
We met a word of last resort.
It was a word we did not use.
And now it seems that we will lose.

I respectfully submit that the Majority reads into the 1978 Agreement between the Council and Madison Teachers, Inc. (the National Education Association was the third party to the Agreement) something that is not there, even though they may have used the word "arbitration" as a layperson's shorthand reference to dispute resolution.

"The language of a contract must be understood to mean what it clearly expresses. A court may not depart from the plain meaning of a contract where it is free from ambiguity. [citation omitted.] In construing the terms of a contract, where the terms are plain and unambiguous, it is the duty of the court to construe it as it stands, even though the parties may have placed a different construction on it. [citation omitted.] It seems to us that when parties to a contract adopt a provision which does not contravene a principle of public policy, and which contains no element of ambiguity, the court

751

has no right, by a process of interpretation, to relieve one of them from any disadvantageous terms which he has actually made."

*Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979) (brackets by *Dykstra*), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981).[1]

---

[1] The Majority applies Wisconsin law. Yet, as the Majority recognizes, the Agreement itself provides: "This Agreement shall be governed by, and all of its provisions construed in accordance with, the law of the District of Columbia." The law of the District Columbia as to how to interpret contracts is essentially as it is in Wisconsin. Thus, contracts that are not ambiguous are applied as they are written—using "ordinary speech" as the touchstone of interpretation. *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 66 (D.C. 2002). Further, a contract is not "ambiguous" merely because the parties executing it do not agree on what it means. *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983). The District of Columbia statute governing arbitrations is at DC Code §§ 16–4301 to 16–4319. The parties' choice-of-law agreement governs how the contract will be construed. *See Madison Beauty Supply, Ltd. v. Helene Curtis, Inc.*, 167 Wis. 2d 237, 245, 481 N.W.2d 644, 648 (Ct. App. 1992). In *Madison Beauty Supply*, the parties acquiesced in the application of Wis. Stat. ch. 788 to interpret what both parties in that case agreed *was* an agreement to arbitrate. Thus, *Madison Beauty Supply* observed:

> We conclude that the parties have chosen ch. 788, Stats., as *the procedure for enforcing their agreement to arbitrate.* We recognize that sec. 24 of the Distribution Agreement provides that the agreement "shall be construed in accordance with the law of the State of Illinois." However, we conclude that by this clause, the parties did not intend to adopt the Illinois statutory procedures for enforcement of their agreement to arbitrate. *The choice-of-law clause controls only the construction of the Agreement.* We consider that by proceeding in a Wisconsin circuit court under ch. 788, the parties have elected that the procedures of that chapter shall govern the enforcement of the arbitration clause in their agreement.

In my view, the Agreement here is not ambiguous: it is *not* an "arbitration agreement"; rather, it is an agreement to have Ronald W. Haughton, and only Haughton, resolve disputes under that Agreement.

¶ 17. The only language of the Agreement as it relates to the resolution of disputes arising under the contract is:

> As a demonstration of their will to make the relationship work well and effectively, the parties hereto agree to the following expedited method of resolving all disputes which arise over the interpretation or application of the Agreement.
>
> a. Professor Ronald W. Haughton is hereby mutually agreed upon by the parties to have final and binding authority to decide any disputes between the parties over the interpretation or application of this Agreement.
>
> b. Professor Haughton will meet the parties at an agreed upon location and time whenever there are pending disputes upon which he is requested to rule.
>
> c. After hearing the positions of the parties, with

*Ibid.* (emphasis added). Here, of course, only *one* party contends that the Agreement is an "arbitration agreement." Thus, the parties here, unlike the parties in *Madison Beauty Supply*, have not used a Wisconsin court to apply chapter 788, but, rather, one party, the Council, argues that chapter 788 has nothing to do with this case. That presents a substantive issue of contract interpretation, what *Madison Beauty Supply* called "construction of the Agreement," *id.*, 167 Wis. 2d at 245, 481 N.W.2d at 648, and we should be using the law of the District of Columbia, because the parties agreed that law would govern the construction of their contract.

witnesses if they so opt, Professor Haughton will issue a prompt decision in writing to the parties. The effort will be to issue a decision on the day the grievance is heard. Such decision will be postmarked not later than seven days following the hearing at which the grievance is presented.

d. Professor Haughton's expenses in actions stemming from the above, will be paid [a payment mechanism is then set out].

Unlike a traditional agreement to arbitrate, the Agreement here neither designates Haughton as an "arbitrator" nor provides for his replacement in case he is no longer available.

¶ 18. Significantly, the Agreement *does* provide for replacement of others involved in the resolution of possible disputes under it. Thus, a "United Staff Services Program," referred to in the Agreement by its acronym "UniServ," is designated as a facilitator between Madison Teachers on one hand, and the Council and the Association on the other. The Agreement provides that "[s]hould a UniServ position become vacant, [Madison Teachers] shall select the person to fill the aforesaid position." Further,

If, during the term of this Agreement, the position of Uniserv Representative becomes vacant, [Madison Teachers] shall, within ten (10) days after such vacancy occurs, either employ a successor UniServ Representative, in accordance with the procedure set forth [earlier in the Agreement], or the parties hereto shall agree on an otherwise mutually acceptable procedure to be followed pending employment of a successor.

If the parties are unable to employ a successor or agree on an otherwise mutually acceptable procedure within the time limit set forth [] above, any party may, upon ten (10) days written notice to the other parties,

> terminate that portion of this agreement relating to the position or positions which have become vacant.

It is inconceivable to me that such careful drafting to cover a possible vacancy in the facilitating organization would not have been replicated in connection with Haughton, the person invested with the authority of "resolving all disputes which arise over the interpretation or application of the Agreement." That the parties did not provide for a similar mechanism if Haughton could no longer resolve disputes under the Agreement; that he was *never* designated as an "arbitrator"; and that the Agreement refers to him by name every time it discusses resolution of disputes is unassailable plain-language evidence that the Agreement was not an agreement to "arbitrate," and that Haughton was not designated to "arbitrate" disputes thereunder. Rather, he, and he alone, was chosen to resolve disputes under the Agreement because, apparently, the parties trusted him personally. That the parties may have agreed to permit someone to stand in for Haughton when they believed he was temporarily unavailable does not transmute the resolution-of-dispute agreement into a formal "arbitration agreement" governed by Wis. Stat. ch. 788.

¶ 19. In sum, the Agreement was executed in September of 1978, and Haughton was the very essence of its dispute-resolution system. With him no longer available, that essence is gone. In my view, it trumps the parties' intent in 1978 by saying that someone other than Haughton can now be his surrogate. Accordingly, I respectfully dissent.