COURT OF APPEALS
DECISION
DATED AND FILED

February 10, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP984**

**STATE OF WISCONSIN**

Cir. Ct. No. **2021CV36**

**IN COURT OF APPEALS
DISTRICT IV**

---

YVON ROUSTAN,

    PLAINTIFF-APPELLANT,

V.

ROBINHOOD FINANCIAL LLC AND ROBINHOOD SECURITIES LLC,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Sauk County: MICHAEL P. SCRENOCK, Judge. *Affirmed*.

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Yvon Roustan, pro se,[1] appeals an order of the Sauk County Circuit Court that requires Roustan to arbitrate his claims against Robinhood Financial LLC and Robinhood Securities LLC (collectively "Robinhood"). Roustan entered into a customer agreement (the "Agreement") with Robinhood in the process of creating a customer account with Robinhood. In the Agreement, Roustan agreed that he and Robinhood would resolve any disputes arising out of the Agreement through arbitration in California. After Robinhood placed certain restrictions on Roustan's account, Roustan brought this action, and Robinhood moved to compel arbitration. Roustan responded by arguing that the arbitration provision of the Agreement is unenforceable because it is unconscionable. The circuit court granted Robinhood's motion to compel arbitration, ruling that the arbitration provision is not unconscionable. In addition, the circuit court modified the arbitration provision to require arbitration in Wisconsin, concluding that it would be unreasonable to require Roustan to personally travel to California during the COVID-19 pandemic.

¶2 On appeal, Roustan argues that the circuit court erred because: (1) the arbitration provision of the contract is unconscionable and, therefore, unenforceable; and (2) the circuit court did not have the authority to modify an individual term of the arbitration provision to require that arbitration occur in Wisconsin but, instead, the circuit court had the authority only to uphold or invalidate the arbitration provision as a whole. We conclude that the arbitration provision is valid and enforceable, and that the circuit court properly modified the

---

[1] After this lawsuit was initiated, Roustan became the subject of a guardianship proceeding. In that proceeding, his spouse, Estela Roustan, became the guardian of his person and his estate. Both Roustan and his guardian signed the submissions filed in this court. No party contends that the guardianship makes a difference to the result in this appeal.

clause regarding the arbitration venue. We therefore affirm the circuit court's order.

## BACKGROUND

¶3 The following facts are not disputed.

¶4 Robinhood is what is referred to by the parties as a "self-directed" retail brokerage company that has its principal place of business in California. Roustan is a retired attorney residing in Baraboo, Wisconsin, and trades in the stock market as a hobby.

¶5 In January 2020, Roustan opened an account with Robinhood. In the process of opening this account, Roustan entered into the Agreement with Robinhood in which Roustan acknowledged that he reviewed the Agreement and agreed to its terms and conditions. The Agreement took the form of a "clickwrap" agreement, a widely used format that requires a user to "affirmatively click a box on the website acknowledging awareness of and agreement to the terms of service before he or she is allowed to proceed with further utilization of the website." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015).

¶6 Germane to this appeal, the terms and conditions of the Agreement contain an arbitration provision. This provision—which is written as a separately numbered paragraph, printed in bold text, and enclosed in a box—requires the parties to settle disputes by arbitration before "FINRA Dispute Resolution, Inc." in

California according to FINRA rules.[2]  The full text of the arbitration provision is reproduced later in this opinion.  The Agreement also contains the following severability clause:

> Severability.  If any provisions or conditions of this Agreement are or become inconsistent with any present or future law, rule, or regulation of any applicable government, regulatory or self-regulatory agency or body, or are deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

¶7      Roustan filed a complaint in the circuit court arising out of a restriction that Robinhood placed on his account.  Robinhood asserts the following regarding that restriction.  Roustan's account was restricted because a September 2020 transfer of funds from Roustan's bank to his Robinhood account was reversed.  Such a reversal triggers a restriction on the account from Robinhood's compliance department until Robinhood can confirm the reason for the reversal by communicating with the customer.  Roustan was told several times by Robinhood's customer service department that, in order to lift the restriction, Roustan was required to provide Robinhood with an explanation for the reversal. Roustan did not provide an explanation for the reversal until after the lawsuit was commenced and, at that point, he explained to counsel for Robinhood that he reversed the transfer because he was disappointed with Robinhood's fees and

---

[2] The Financial Industry Regulatory Authority ("FINRA") is a "self-regulatory organization" established under the Securities Exchange Act and is "responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation." *Sacks v. S.E.C.*, 648 F.3d 945, 948 (9th Cir. 2011) (citation omitted).

costs. The restriction was lifted from Roustan's account on approximately February 14, 2021.

¶8 Roustan's complaint was filed during the events just described and alleges the following causes of action: (1) violation of the Wisconsin Uniform Securities Law; (2) breach of contract; (3) breach of implied warranty of merchantability; (4) negligent misrepresentation; and (5) breach of fiduciary duty.

¶9 In response, Robinhood filed a motion to compel arbitration pursuant to the arbitration provision in the Agreement and WIS. STAT. § 788.02 (2019-20).[3] Roustan opposed Robinhood's motion to compel arbitration, arguing that the arbitration provision is unconscionable and, therefore, unenforceable. The circuit court concluded that the arbitration provision is not void for unconscionability. Accordingly, the circuit court granted Robinhood's motion to compel arbitration and stayed this lawsuit pending arbitration. The circuit court further ordered that the parties conduct arbitration in Wisconsin because it would be unreasonable to require Roustan to travel to California for arbitration during the COVID-19 pandemic. Roustan appeals.

---

[3] WISCONSIN STAT. § 788.02 states in full:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶10    We mention other material facts in the following discussion.

## DISCUSSION

¶11    Roustan argues that, for two reasons, the circuit court erred in granting Robinhood's motion to compel arbitration. First, Roustan contends that the arbitration provision is unconscionable. We conclude that the arbitration provision is not substantively unconscionable and, as a result, we need not reach the question of procedural unconscionability. Second, Roustan contends that the circuit court lacked the authority to modify a term of the arbitration provision so as to require arbitration in Wisconsin and, rather than changing the venue clause of the arbitration provision, the circuit court was required to determine that the entire arbitration provision is unenforceable. We conclude that the circuit court did not err in modifying a term in the arbitration provision.

### I.  Unconscionability of the Arbitration Provision.

¶12    We begin by setting forth the standard of review and governing principles regarding arbitration provision interpretation and purported unconscionable arbitration provisions.

### A.  Standard of Review and Governing Principles of Arbitration Provision Interpretation and Purported Unconscionable Arbitration Provisions.

¶13    "It is well established that arbitration is a matter of contract." *Riley v. Extendicare Health Facilities, Inc.*, 2013 WI App 9, ¶13, 345 Wis. 2d 804, 826 N.W.2d 398 (2012). Contract interpretation is a question of law that we review de novo. *First Weber Grp., Inc. v. Synergy Real Est. Grp., LLC*, 2015 WI 34, ¶20, 361 Wis. 2d 496, 860 N.W.2d 498. When construing contracts that were freely entered into, our goal "is to ascertain the true intentions of the parties as expressed

by the contractual language." *Riley*, 345 Wis. 2d 804, ¶13 (citation omitted). "The best indication of the parties' intent is the language of the contract itself, for that is the language the parties saw fit to use." *Id.* (citing *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476).

¶14 "Wisconsin has a 'policy of encouraging arbitration as an alternative to litigation.'" *First Weber Grp.*, 361 Wis. 2d 496, ¶24. Accordingly, arbitration provisions are presumed to be valid in Wisconsin. *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶28, 290 Wis. 2d 514, 714 N.W.2d 155; *see also* WIS. STAT. § 788.01 ("A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract … shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract."). As just noted, an arbitration provision may be invalid for reasons that apply to all contract provisions, including unconscionability of the contract. *Wisconsin Auto Title Loans*, 290 Wis. 2d 514, ¶28.

¶15 An "unconscionable" contract provision is unenforceable. *Id.*, ¶29. "Unconscionability has generally been recognized where there is an absence of meaningful choice on the part of one party, together with contract terms that are unreasonably favorable to the other party." *Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶27, 259 Wis. 2d 587, 657 N.W.2d 411. This determination includes both procedural and substantive factors. *Id.* In considering substantive unconscionability, we examine whether the terms of a contract are "unreasonably favorable to the more powerful party" or "whether the terms are 'commercially reasonable,' that is, whether the terms lie outside the limits of what is reasonable or acceptable." *Wisconsin Auto Title Loans*, 290 Wis. 2d 514, ¶36. "Substantive unconscionability focuses on the one-sidedness, unfairness, unreasonableness,

harshness, overreaching, or oppressiveness of the provision at issue." ***Id.***, ¶59. For a contract or a contract provision to be declared unenforceable because it is unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable. ***Id.***, ¶29; ***Deminsky***, 259 Wis. 2d 587, ¶27 ("To tip the scales in favor of unconscionability requires a certain quantum of procedural plus a certain quantum of substantive unconscionability." (citation omitted)).

¶16    Whether facts render a contractual provision unconscionable is a question of law that we determine independently of the circuit court but benefiting from its analysis. ***Wisconsin Auto Title Loans, Inc.***, 290 Wis. 2d 514, ¶25. A party seeking to invalidate a provision in a contract has the burden of proving facts that justify a legal conclusion that the provision is invalid. ***Id.***, ¶30.

### B. The Arbitration Provision is Not Unconscionable.

¶17    Roustan argues that the arbitration provision is substantively unconscionable because it is "coercively one-sided." We reject Roustan's argument for the following reasons.

¶18    As explained, "[s]ubstantive unconscionability refers to whether the terms of a contract are unreasonably favorable to the more powerful party," and the analysis of substantive unconscionability "focuses on the one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue." ***Id.***, ¶¶36, 59. In this case, the full terms of the arbitration provision are as follows:

28. Arbitration.

A. This Agreement contains a pre-dispute arbitration clause. By signing an arbitration agreement, the parties agree as follows:

(1) All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(2) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(3) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(4) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.

(5) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(6) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(7) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this Agreement.

B. Any controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California.

C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws. If I am a foreign national, non-resident alien, or if I do not reside in

9

the United States, I agree to waive My right to file an action against Robinhood in any foreign venue.

D. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (1) the class certification is denied; or (2) the class is decertified; or (3) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

¶19 The arbitration provision is not substantively unconscionable because its terms are not "unreasonably favorable" to Robinhood. *See id.*, ¶36. According to the arbitration provision, both Roustan and Robinhood are subject to the same terms of arbitration, including: both parties give up the right to sue each other in court; any claim brought by either party under the Agreement will be subject the same rules of FINRA Dispute Resolution, Inc.; and both parties agree that judicial remedies are limited after arbitration. The arbitration provision applies equally to Roustan and Robinhood.

¶20 Additionally, there are no exceptions to these terms that give Robinhood greater rights and remedies relative to Roustan. For example, in *Wisconsin Auto Title Loans*, the arbitration provision of the contact at issue required both parties to resolve disputes through binding arbitration, except that Wisconsin Auto Title Loans retained the "right to enforce the borrower's payment obligations in the event of default, by judicial or other process, including self-help repossession." *Id.*, ¶61. Our supreme court held that this arbitration provision was substantively unconscionable. *Id.*, ¶66. The court reasoned that "[t]he exception to the arbitration provision is far too broad and one-sided, granting

Wisconsin Auto Title Loans a choice of forum—arbitration or the circuit court— for its claims, while permitting the borrower to raise claims only before an arbitrator." *Id.* In the present case, however, there is nothing in the arbitration provision that unreasonably expands Robinhood's rights and remedies relative to Roustan's. Unlike the contract in *Wisconsin Auto Title Loans*, Robinhood has not imposed terms on Roustan that it has not accepted for itself. *See id.* Therefore, we conclude that the arbitration provision is not substantively unconscionable.

¶21 Further, Roustan gives us no viable reason to conclude that the terms of the arbitration provision are not "commercially reasonable." *Id.*, ¶36. Indeed, in briefing in this court, Roustan states that all other contracts he had with other trading companies known to him as of the time he entered into the agreement with Robinhood also had "mandatory arbitration" provisions.

¶22 Roustan also argues that the arbitration provision is substantively unconscionable and, as a result, the entire arbitration provision is unenforceable because the selection of California as the arbitration venue is "one-sided." Roustan suggests that this selection is one-sided because California is the "home of Robinhood" and because Roustan is "unable to travel."[4] However, as our supreme court recognized in *Wisconsin Auto Title Loans*, the one-sidedness of an arbitration provision does not necessarily render that provision substantively unconscionable. *Id.*, ¶68 ("[A] one-sided arbitration provision may not be unconscionable under the facts of all cases."). Rather, the substantive unconscionability of a one-sided arbitration provision depends on whether the

---

[4] As we discuss in the next section of this opinion, the circuit court's order changing the venue for arbitration to Wisconsin disposes of Roustan's assertion regarding the alleged substantive unconscionability of the venue clause.

terms of a contract "are unreasonably favorable to the more powerful party" or are "commercially reasonable." *Id.*, ¶36.

¶23 The arbitration venue selected by the Agreement is not substantively unconscionable. First, it is not unreasonable for Robinhood to select its home state as the venue for dispute resolution. As this court has recognized, it is commercially reasonable that a company would select the location of its headquarters as its preferred location for resolving disputes. *Cf. Pietroske, Inc. v. Globalcom, Inc.*, 2004 WI App 142, ¶7, 275 Wis. 2d 444, 685 N.W.2d 884 (concluding that a company's choice of its headquarters' city in a forum-selection clause was "reasonable" because "all of [the company's] records and employee-witnesses would be located there"). As a result, we do not conclude that Roustan has satisfied his burden to set forth facts that justify a conclusion of substantive unconscionability. *See Wisconsin Auto Title Loans*, 290 Wis. 2d 514, ¶30.

¶24 In sum, Roustan has failed to satisfy his burden to prove that the arbitration provision is substantively unconscionable. *See id.* ("[A] party seeking to invalidate a provision in a contract … has the burden of proving facts that justify a court's reaching the legal conclusion that the provision is invalid."). As noted earlier, Roustan's unconscionability argument fails if he cannot establish both procedural and substantive unconscionability. *See id.*, ¶29. Roustan has failed to show that the arbitration provision is substantively unconscionable and, accordingly, his unconscionability argument fails, and we need not consider his arguments regarding procedural unconscionability.

## II. Modification of the Arbitration Venue.

¶25 We now determine whether the circuit court properly modified what we refer to as the "arbitration venue clause" to require arbitration in Wisconsin.

12

Roustan contends that the circuit court had the authority only to conclude that the entire arbitration provision is unenforceable and did not have the authority to modify the arbitration venue clause because that clause is "mandatory." Robinhood responds that the circuit court had the authority to modify the arbitration venue clause because that modification does not undermine the rest of the Agreement and because the Agreement contains a severability clause. We begin by setting forth the standard of review and governing principles regarding modification and severability of the terms of an arbitration agreement.

### A. Standard of Review and Governing Principles Regarding Modification and Severability of Arbitration Agreement Terms.

¶26 Under WIS. STAT. § 788.01, "[a] provision in any written contract to [arbitrate] … shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract." The principal purpose of this section is "to require courts to enforce arbitration agreements 'according to their terms.'" *Riley*, 345 Wis. 2d 804, ¶14 (citation omitted). However, this court has held that "[w]hen one particular term of an arbitration agreement has failed, courts look to the parties' intent to determine 'whether a substituted term should be inserted or whether the agreement will fail altogether.'" *Id.*, ¶14 (quoting *Madison Teachers, Inc. v. Wisconsin Educ. Ass'n Council*, 2005 WI App 180, ¶12, 285 Wis. 2d 737, 703 N.W.2d 711). We review this question of law de novo. *Id.*, ¶11.

¶27 "A severability clause, though not controlling, is entitled to great weight in determining if the remaining portions of a contract are severable." *Rosecky v. Schissel*, 2013 WI 66, ¶58, 349 Wis. 2d 84, 833 N.W.2d 634. However, even if a contract contains a severability clause, a court will not sever a

13

contractual provision from a contract if severing that provision will "defeat the primary purpose of the bargain." *Riley*, 345 Wis. 2d 804, ¶45 (quoting *Schara v. Thiede*, 58 Wis. 2d 489, 495, 206 N.W.2d 129 (1973)).

¶28 A review of this court's decision in *Madison Teachers* illustrates when a term may be substituted in an arbitration agreement without nullifying the entire agreement. In *Madison Teachers*, the arbitration agreement named a Professor Haughton as the arbitrator for disputes, but Professor Haughton was not available to arbitrate due to "age and/or infirmity." *Madison Teachers*, 285 Wis. 2d 737, ¶4. The agreement did not indicate "any expectation as to what will happen if Professor Haughton is not available to serve as arbitrator." *Id.*, ¶11. This court concluded that Professor Haughton's unavailability did not require nullification of the entire arbitration provision because "arbitration was the overriding consideration, rather than the existence of a specifically named arbitrator." *Id.*, ¶14. Although Haughton was identified by name in the agreement, this court held that a "prompt resolution" of disputes and "arbitration by a neutral party" were central factors to the parties. *Id.*, ¶¶13-14. Accordingly, this court upheld the arbitration agreement and remanded to allow the parties to select a new arbitrator. *Id.*, ¶15.

## B. The Circuit Court Did Not Err in Modifying the Arbitration Venue Clause to Require Arbitration in Wisconsin.

¶29 In the present case, the circuit court concluded that the arbitration venue clause must be modified because it unreasonably requires travel to

California during the COVID-19 pandemic.[5]  Robinhood agrees with the circuit court's decision to change the arbitration venue and requests that we affirm the circuit court's decision in its entirety.[6]  Because the arbitration provision does not identify an alternate arbitration venue, we "look to the parties' intent to determine 'whether a substituted term should be inserted or whether the agreement will fail altogether.'"  *See* **Riley**, 345 Wis. 2d 804, ¶14 (quoting **Madison Teachers**, 285 Wis. 2d 737, ¶12).  As noted earlier, "[t]he best indication of the parties' intent is the language of the contract itself, for that is the language the parties saw fit to use."  *Id.*, ¶13 (citing **Town Bank**, 330 Wis. 2d 340, ¶33).

¶30     For the following reasons, the language of the Agreement demonstrates that the parties did not intend to litigate disputes in court if California is not available as a venue for arbitration.  First, the arbitration provision provides that "[a]ll parties to this Agreement are giving up the right to sue each other in court."  This statement indicates that the parties primarily intended to arbitrate any disputes instead of litigating those disputes in court.

---

[5] Specifically, the circuit court stated:  "I don't know how arbitration works in the pandemic, but if it would require Mr. Roustan to travel to California personally, I would find that to be unreasonable under the circumstances."  At several points in his briefing in this court, Roustan incorrectly claims that the circuit court found the *entire* arbitration provision unreasonable.  The record shows that the circuit court did not conclude that the entire arbitration provision is unreasonable.

[6] In briefing in this court, Robinhood points out that the arbitration provision does not necessarily require Roustan to travel to California because "the rules of FINRA Dispute Resolution, Inc.," allow Roustan's claim to be decided by an arbitrator without a hearing.  If Roustan requests a hearing, Robinhood asserts that the FINRA rules allow Roustan to proceed via a telephonic hearing if he so chooses.  Robinhood did not mention these rules in the circuit court proceedings, and the circuit court did not reach a conclusion regarding the applicability of these rules to the facts of this case.  Accordingly, we do not address the application of the FINRA rules as advanced by Robinhood. **Townsend v. Massey**, 2011 WI App 160, ¶25, 338 Wis. 2d 114, 808 N.W.2d 155 ("[T]he forfeiture rule requires that, to preserve its arguments, a party must 'make all of their arguments to the trial court.'" (citation omitted)).

Also, like the agreement in ***Madison Teachers***, there is no language specifically stating that the "parties prefer to take their disputes to the courthouse" if California is not available as an arbitration venue. *See **Madison Teachers***, 285 Wis. 2d 737, ¶13. Second, the arbitration provision states: "Any controversy or claim arising out of or relating to this Agreement … shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc. ("FINRA DR"). I agree to arbitrate any controversy or claim before FINRA DR in the State of California." This statement indicates that a central focus of the arbitration provision is for FINRA to be the arbitrator of any disputes and for the FINRA rules to govern the resolution of those disputes. Even though this clause sets California as the venue for arbitration, the remainder of the arbitration provision's language demonstrates that the parties' primary intent is to resolve disputes through arbitration before FINRA.

¶31 Further, the Agreement's severability provision strongly indicates that the remainder of the arbitration provision can stand separate from the arbitration venue clause.[7] *See **Rosecky***, 349 Wis. 2d 84, ¶58 ("A severability clause, though not controlling, is entitled to great weight in determining if the remaining portions of a contract are severable."). The arbitration venue clause in this case is not "integral to the parties' agreement to arbitrate" because there is no

---

[7] To repeat, the severability clause provides in relevant part:

> If any provisions or conditions of this Agreement are … deemed invalid or unenforceable by any court of competent jurisdiction, such provisions shall be deemed rescinded or modified, to the extent permitted by applicable law, to make this Agreement in compliance with such law, rule or regulation, or to be valid and enforceable, but in all other respects, this Agreement shall continue in full force and effect.

"pervasive intertwining" of the arbitration venue with the prescribed dispute resolution process. *See* **Riley**, 345 Wis. 2d 804, ¶40. The substitution of Wisconsin for California as the arbitration venue does not alter the parties' primary intent to resolve disputes through arbitration and to conduct such arbitration before FINRA using the FINRA rules. Accordingly, the severance of that clause does not "defeat the primary purpose of the bargain." *See id.*, ¶45 (quoting **Schara**, 58 Wis. 2d at 495). Therefore, we conclude that the circuit court properly modified the arbitration venue clause to require arbitration in Wisconsin, and that the remainder of the arbitration provision is valid and enforceable.

¶32　Roustan argues that the circuit court was without authority to modify the arbitration venue clause because Wisconsin does not allow the "blue pencil" modification of contract terms pursuant to WIS. STAT. § 103.465.[8] Under the so-called "blue pencil rule," a restrictive covenant is void in its entirety if any restraint in that covenant is unreasonable and not divisible from the rest of the covenant. **Star Direct, Inc. v. Dal Pra**, 2009 WI 76, ¶¶73-78, 319 Wis. 2d 274, 767 N.W.2d 898. However, the blue pencil rule and § 103.465 apply only to

---

[8] WISCONSIN STAT. § 103.465 provides, in full:

> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this section, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

restrictive covenants or covenants not to compete. *See id.*; Sec. 103.465. Thus, the blue pencil rule does not apply in the present case.[9]

## CONCLUSION

¶33    For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[9] Roustan also contends that Judge Screnock, the circuit court judge in this matter, was biased against him. Specifically, Roustan points to Judge Screnock's statement during the hearing that the arbitration venue clause "shot up in my mind as a red flag" and Judge Screnock's acceptance of Robinhood's unbriefed arguments at the hearing regarding the court's authority to modify terms of a contract. However, Roustan does not explain how these actions could reasonably call Judge Screnock's impartiality into question, and we discern no basis for any claims of bias. *See State v. Gudgeon*, 2006 WI App 143, ¶21, 295 Wis. 2d 189, 720 N.W.2d 114. Accordingly, we reject Roustan's argument regarding bias.