#25953-rev & rem-SLZ

**2011 S.D. 95**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LEWELLYN WRIGHT and DELLA
RICHARDS, SPECIAL CO-
ADMINISTRATORS OF THE
ESTATE OF KATHERINE G. WRIGHT,                     Plaintiffs and Appellees,

     v.

GGNSC HOLDINGS LLC d/b/a GOLDEN
HORIZONS and GOLDEN LIVING,
GGNSC-RAPID CITY BLACK HILLS LLC,
d/b/a GOLDEN LIVING CENTER –
BLACK HILLS, SOUTH DAKOTA –
BEVERLY ENTERPRISES, INC.
d/b/a BEVERLY HEALTHCARE –
BLACK HILLS, BEVERLY ENTERPRISES, INC.,
JEFFERY L. GENGLER, FRANCES K.
FRANKE and JOHN DOES 1-10,
NAMES UNKNOWN AND ADDRESSES
UNKNOWN, and JOHN DOES 11-30,
NAMES UNKNOWN AND ADDRESSES
UNKNOWN,                                            Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE  SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JANINE M. KERN
Judge

\* \* \* \*

CONSIDERED ON BRIEFS
ON NOVEMBER 14, 2011

OPINION FILED **12/28/11**

CAROL A. PAHLKE
Rapid City, South Dakota

and

KYLE J. LONG of
The Robert Pahlke Law Group
Scottsbluff, Nebraska

Attorneys for plaintiffs
and appellees.


JEANELLE R. LUST
KEVIN R. McMANAMAN of
Knudsen, Berkheimer,
  Richardson & Endacott, LLP
Lincoln, Nebraska

Attorneys for defendants
and appellants.

ZINTER, Justice

[¶1.] The parties' arbitration agreement provided that arbitration would occur "in accordance with the National Arbitration Forum Code of Procedure," but the National Arbitration Forum (NAF) became unavailable to administer its Code and the arbitration. Defendants-Appellants (collectively "GGNSC") moved the circuit court to appoint a substitute arbitrator under Section 5 of the Federal Arbitration Act (FAA). The circuit court concluded that a substitute arbitrator could not be appointed under Section 5 because the NAF Code of Procedure was integral to the parties' agreement to arbitrate and the NAF was unavailable to administer its Code. Considering the language of the arbitration agreement, the language of the NAF Code, and the federal policy expressed in the FAA, we reverse. We hold that Section 5 applies, and that absent some other defense, Section 5 requires the appointment of a substitute arbitrator.

*Facts and Procedural History*

[¶2.] In October 2004, Katherine Wright was admitted to a GGNSC nursing home in Rapid City. Katherine's husband, Lewellyn Wright, signed a Resident and Facility Arbitration Agreement on Katherine's behalf. Katherine transferred to another nursing home, but returned to the GGNSC facility a few months later. Upon her readmission, Lewellyn signed another Resident and Facility Arbitration Agreement.

[¶3.] The agreements were identical. In bold, capital letters, the agreements (the "agreement") provided:

> **THE PARTIES UNDERSTAND AND AGREE THAT THIS CONTRACT CONTAINS A BINDING ARBITRATION**

#25953

**PROVISION WHICH MAY BE ENFORCED BY THE PARTIES, AND THAT BY ENTERING INTO THIS ARBITRATION AGREEMENT, THE PARTIES ARE GIVING UP AND WAIVING THEIR CONSTITUTIONAL RIGHT TO HAVE ANY CLAIM DECIDED IN A COURT OF LAW BEFORE A JUDGE AND A JURY, AS WELL AS ANY APPEAL FROM A DECISION OR AWARD OF DAMAGES.**

In accordance with this provision, the agreement provided that all disputes regarding Katherine's care would be resolved "exclusively by binding arbitration . . . and not by a lawsuit or resort to court process." The agreement also provided that the arbitration would occur "in accordance with the National Arbitration Forum Code of Procedure."[1] To obtain the NAF Code of Procedure, a footnote informed the reader to contact the NAF. The footnote provided: "Information about the National Arbitration Forum, including a complete copy of the Code of Procedure, can be

---

1. The arbitration agreement provided:

> It is understood and agreed by Facility and Resident that any and all claims, disputes, and controversies (hereafter collectively referred to as a "claim" or collectively as "claims") arising out of, or in connection with, or relating in any way to the Admission Agreement or any service or health care provided by the Facility to the Resident shall be resolved *exclusively by binding arbitration* to be conducted at a place agreed upon by the Parties, or in the absence of such an agreement, at the Facility, *in accordance with the National Arbitration Forum Code of Procedure, which is hereby incorporated into this Agreement* [footnote 1]*, and not by a lawsuit or resort to court process.* This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.

(Emphasis added.)

-2-

obtained from the Forum . . . ." The footnote provided the NAF's contact information and website address.[2]

[¶4.]         Katherine died while in the nursing home. In April 2008, the special co-administrators of Katherine's estate, Della Richards and Lewellyn Wright (collectively "Wright"), brought this action for wrongful death in circuit court. GGNSC moved to compel arbitration. Wright objected and started discovery regarding the authenticity of Lewellyn's signatures on the arbitration agreement. Almost two years later, Wright abandoned the invalid signature defense and began discovery regarding Katherine's competency and Lewellyn's authority to enter into the agreement.

[¶5.]         At some point before the arbitration motion was decided by the circuit court, the Minnesota Attorney General filed suit against the NAF. The NAF subsequently entered into a settlement in which it agreed to discontinue arbitrating consumer disputes. Therefore, the NAF became unavailable to administer an arbitration of this dispute.

---

2.      The arbitration agreement also contained a severance clause. The parties devote significant briefing to the fact that the severance clause provided that if any portion of the arbitration agreement was unenforceable, the remainder of the agreement would be effective. Reliance on severance-clauses in similar cases has subjected those cases to criticism. *See, e.g., Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 220 (Pa. Super. Ct. 2010) (criticizing *Jones v. GGNSC Pierre LLC*, 684 F. Supp. 2d 1161 (D.S.D. 2010), for relying on the arbitration agreement's severance clause to require arbitration by a substitute arbitrator without first determining whether the provision designating the NAF was integral to the contract). We do not rest our opinion on the existence of a severance clause. In our view, the NAF Code and the other language of the arbitration agreement are sufficiently clear to decide the issue.

[¶6.] The circuit court conducted a day-long hearing on the motion to compel arbitration. Six depositions, four live witnesses, and ninety-five exhibits were submitted. The hearing related to Wright's arguments that Lewellyn had no authority to execute the arbitration agreement and that Katherine was not bound by it. The unavailability of the NAF was not an issue. However, after briefing was completed, the circuit court raised the unavailability of the NAF as a potential bar to arbitration.

[¶7.] Following further briefing on this new issue, the circuit court denied GGNSC's motion to compel arbitration because the NAF was no longer available. GGNSC appeals the court's order allowing the case to proceed in circuit court.

*Decision*

[¶8.] GGNSC argues that the NAF and its Code of Procedure were not integral to the parties' agreement to arbitrate, and therefore, Section 5 of the FAA required the appointment of a substitute arbitrator. "[W]e review de novo the circuit court's interpretation of an arbitration agreement." *Masteller v. Champion Home Builders, Co.*, 2006 S.D. 90, ¶ 9, 723 N.W.2d 561, 563.

[¶9.] The parties agreed to arbitrate any dispute "arising out of, or in connection with, or relating in any way to . . . any service or health care provided" by GGNSC. Wright's complaint involved a dispute about the service and health care Katherine received. Such disputes were to be resolved "exclusively by binding arbitration . . . and not by a lawsuit or resort to court process." The boldface type in the agreement informed the parties that the residential care agreement required binding arbitration and that Wright was giving up the right to have "any claim

-4-

decided in a court." The words "arbitration" or "arbitrate" appeared eighteen times in the agreement.

[¶10.] But the agreement also provided that the arbitration was to occur "in accordance with the National Arbitration Forum Code of Procedure." Furthermore, the NAF Code contained a rule that the Code could not be administered by any entity other than the NAF, and the NAF was unavailable to perform its administrative duties. Therefore, the question is whether Section 5 of the FAA requires this dispute to be arbitrated by a substitute arbitrator when the NAF is unable to administer its Code.

[¶11.] There is no dispute the FAA applies. The agreement provided that it was to be governed by and interpreted under the FAA. The FAA also governs because the nursing home services were provided as a part of GGNSC's business operating in interstate commerce. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401-02, 87 S. Ct. 1801, 1804-05, 18 L. Ed. 2d 1270 (1967) (noting that a contract evidencing a transaction in interstate commerce falls within the provisions of the FAA). And because this agreement fell "within the scope and coverage of the Federal Arbitration Act . . . [, it] must be enforced in state . . . courts." *KPMG LLP v. Cocchi*, 565 U.S. ___, 132 S. Ct. 23, ___ L. Ed. 2d ___ (2011).

[¶12.] Section 5 of the FAA requires that upon request of a party, the court shall appoint a substitute arbitrator when there is an agreement requiring arbitration and for any reason there is a vacancy or lapse in the naming of an arbitrator.

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such

> method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .

9 U.S.C. § 5 (2010).

[¶13.] GGNSC argues that Section 5 fills the gap created by the unavailability of the NAF and requires the appointment of a substitute arbitrator. Wright, however, emphasizes that the arbitration agreement required that the arbitration occur in accordance with the National Arbitration Forum Code of Procedure. Wright argues that Section 5 does not apply because the NAF Code of Procedure was "integral" to the arbitration agreement and that Code cannot be applied by a substitute arbitrator. Courts that have considered identical and analogous arbitration agreements are divided on the issue.

[¶14.] Courts applying Section 5 in similar circumstances have utilized two approaches. Most cases apply the approach adopted by the Ninth and Eleventh Circuit Courts of Appeals. Under that approach, if the designated forum becomes unavailable, Section 5 requires the appointment of a substitute arbitrator unless "the choice of forum is an integral part of the agreement to arbitrate" and not merely an "'ancillary logistical concern.'" *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006) (quoting *Brown v. ITT Consumers Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (quoting *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D. Ill. 1990))). Stated conversely, a substitute

arbitrator need not be appointed under Section 5 if "it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." *Zechman*, 742 F. Supp. at 1364.[3]  Under the other approach, courts look to whether designation of an arbitrator or arbitration forum is tantamount to a forum selection clause.[4]  Because the parties here do not contend that this agreement was tantamount to a forum selection clause, we apply the "integral v. ancillary" approach.

[¶15.]  The circuit court analyzed the conflicting cases, including a number of cases involving the unavailability of the NAF.  The court concluded that designation of the NAF's Code was integral to the arbitration agreement for two reasons.  First, the court relied on cases finding an arbitral designation integral when the agreement designated both the administrator and the applicable rules.  *See, e.g.*, *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 944 N.E.2d 327 (2011).  The circuit court acknowledged that the Wright-GGNSC agreement only specified that the NAF Code of Procedure was to govern the arbitration and did not expressly designate an NAF arbitrator or an NAF-administered arbitration.  But the court concluded that

---

3.   *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), is an example of an arbitral forum designation that was as important a consideration as the agreement to arbitrate.  That case involved a Wall Street securities dispute.  The parties had designated the New York Stock Exchange as the arbitral forum to resolve such matters.

4.   The Second and Fifth Circuit Courts of Appeals note that exclusive designation of an arbitration administrator, or restricting application of the rules to a particular administrator, may be tantamount to a forum selection clause.  *See Salomon*, 68 F.3d at 559; *Nat'l Iranian Oil Co. v. Ashland Oil Inc.*, 817 F.2d 326 (5th Cir. 1987).  In those cases, the particularized expertise of the designated arbitrator or the unique location of the arbitral forum was critical to the arbitration agreement.  That is not our case.

express designation of the NAF Code of Procedure was an implicit selection of an "NAF arbitrator." The court further noted that Rule 1A of the NAF Code of Procedure provided that the "Code shall be administered only by the National Arbitration Forum." And because the NAF was unavailable to administer its Code, the court concluded that a non-NAF administered arbitration was not contemplated by the parties' agreement. Second, the court observed that under NAF Rule 47B, costs and expenses were to be assessed against a party seeking resolution of the underlying dispute through any "lawsuit, administrative proceeding, or other action." Because the court assumed that use of a substitute arbitrator would trigger this penalty provision, the court again concluded that the parties' agreement did not contemplate a non-NAF administered arbitration. For both reasons, the circuit court concluded that designation of the NAF's Code was integral to the parties' agreement to arbitrate and Section 5 of the FAA could not be applied.

[¶16.]    We arrive at the opposite conclusion for two reasons. First, "[t]he Federal Arbitration Act reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP*, 565 U.S. at ___, 132 S. Ct. at 25 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 3356, 87 L. Ed. 2d 444 (1985)). South Dakota has also "consistently favored the resolution of disputes by arbitration. . . . It is an overriding policy that arbitration will be favored, when provided for in a contract provision, as a means to the resolution of disputes." *Thunderstik Lodge, Inc. v. Reuer*, 1998 S.D. 110, ¶ 14, 585 N.W.2d 819, 822 (internal citations omitted); *see also Rossi Fine Jewelers, Inc. v. Gunderson*, 2002 S.D. 82, ¶ 7, 648 N.W.2d 812, 814. For these reasons,

"questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983). And under "[t]he Arbitration Act . . . , as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25, 103 S. Ct. at 941.

[¶17.]     Second, we read the NAF Code differently than the circuit court. In our view, the NAF Code did not require the appointment of an "NAF arbitrator." Further, the Code did not preclude a substitute arbitrator, in a non-NAF administered arbitration, from using the same substantive law and procedural rules as would have been applied under the NAF Code. Finally, we do not believe that the penalty provision in the NAF Code was intended to apply when the NAF became unavailable and a resolution of the dispute was sought through arbitration by a substitute arbitrator.

[¶18.]     Under the NAF Code, an "NAF arbitrator" was not required. NAF Code of Procedure Rules 2F and 21 governed the selection of arbitrators. Those rules provided for the mutual selection of any arbitrator, and in the absence of an agreed arbitrator, a selection *process* was specified. But the specified selection process did not restrict who could act as an arbitrator (other than the arbitrator could not be a director or officer of the NAF). Further, Wright has cited no provision that required the appointment of an "NAF arbitrator." On the contrary, Wright notes that the question in this case is whether an "independent arbitrator"

can apply NAF rules. We conclude the circuit court erred in determining the arbitration agreement contemplated that only an "NAF arbitrator" could arbitrate the parties' dispute.

[¶19.] We acknowledge that the NAF rules did provide that only the NAF could "administer" its Code of Procedure. But we find that point of little significance. A review of the NAF Code reflects that NAF administration involved what is commonly provided by many arbitration services available today. *See generally Wilson v. Dell Fin. Servs., L.L.C.*, No. CIV.A. 5:09-CV-00483, 2010 WL 503093, at *2 (S.D.W. Va. Feb. 8, 2010) (identifying the NAF, the American Arbitration Association (AAA), and the Judicial Arbitration and Mediation Services (JAMS) as three general arbitration administrators); N.C. Gen. Stat. Ann. § 1-569.1 cmt. 1 (2011) (listing the AAA, JAMS, NAF, Center for Public Resources (CPR), NASD Regulation, Inc., American Stock Exchange, New York Stock Exchange, and International Chamber of Commerce as arbitration services). More importantly, Wright has not identified any unique NAF administrative provision that would have substantively affected the outcome of this arbitration. The NAF Code did not require the application of any particular substantive law. It required that the arbitrator apply the "applicable substantive law."

[¶20.] Procedurally, the NAF's responsibility to administer its Code is of even less significance. Wright concedes that the NAF Code of Procedure merely covered "the topics of civil procedure that . . . public codes cover," and it regulated "how to

litigate the parties' dispute."[5]  In those circumstances, both Wright's and GGNSC's authorities recognize that although a substitute arbitrator may not administer the NAF Code, a competent substitute arbitrator can apply the NAF's rules of procedure that public codes cover.  *See Carr*, 241 Ill. 2d at 31, 944 N.E.2d at 335 ("[I]t is possible in some cases for a substitute arbitrator to use the rules specified in an arbitration agreement and where that is so, the mere designation of particular rules to govern an arbitration will not prevent the naming of a substitute arbitrator under [S]ection 5." (citing *Reddam,* 457 F.3d at 1060; *Brown,* 211 F.3d at 1222; *Zechman,* 742 F. Supp. at 1365)); *see also Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739, at *5 (E.D. Mich. Dec. 3, 2009) ("The court instructs the parties to confer and agree on an alternative arbitrator who will apply the rules of NAF under its Code of Procedure, if possible."); *Levy v. Cain, Watters & Assocs., P.L.L.C.*, No. 2:09-CV-723, 2010 WL 271300, at *11 (S.D. Ohio Jan. 15, 2010) (ordering same).[6]

---

5.  This concession belies Wright's later assertion that the Code of Procedure has numerous provisions that "substantively affect the rights of the parties."

6.  We disagree with the circuit court and Wright's contrary cases.  *See, e.g., Stewart*, 9 A.3d 215; *Grant v. Magnolia Manor-Greenwood, Inc.*, 383 S.C. 125, 678 S.E.2d 435 (2009).  In *Stewart*, a Pennsylvania superior court examined an identical nursing home arbitration agreement and found its designation of the NAF Code integral to the agreement.  9 A.3d at 217.  That court reasoned that the parties had agreed the arbitration proceedings would be conducted pursuant to the NAF Code, and under that Code "the arbitrators would be members of the NAF, who are the only people authorized to administ[er] and apply the NAF code."  *Id.* at 220.  As previously discussed, we see no impediment to a substitute arbitrator applying the same substantive law and using common procedural rules like those found in the NAF Code.

  In *Grant*, the South Carolina Supreme Court considered an agreement requiring "binding arbitration administered by the National Health Lawyers Association."  383 S.C. at 128, 678 S.E.2d at 437.  That court found this

(continued . . .)

[¶21.]       We conclude that designation of the NAF Code of Procedure did not require an "NAF arbitrator"; a substitute arbitrator could apply common procedural rules like those found in the NAF Code of Procedure and public domain; and a substitute arbitrator would be required to apply the same substantive law. Therefore, the parties' contractual expectations regarding both the substantive and procedural aspects of arbitration would not be frustrated by the appointment of a substitute arbitrator.

[¶22.]       Wright and the circuit court, however, also relied on the penalty provision in the NAF Code.  The penalty applied if Wright commenced or pursued resolution of the dispute by a "lawsuit, administrative proceeding, or other action." Some courts have concluded that the use of a substitute arbitrator constitutes pursuit of a prohibited alternative action.  When an arbitration forum's code of procedure penalizes such alternatives, those courts conclude that the penalty provision reflects the parties' intent that the designated arbitration forum was integral to the agreement to arbitrate.  *See, e.g.*, *Carr*, 241 Ill. 2d at 32-33, 944 N.E.2d at 336-37 (interpreting a penalty provision that prohibited the parties from resolving the dispute "in a forum other than [the] NAF").

---

(. . . continued)

designation integral because: the parties could not vary the "rules on communications, service, counting of days, publication and form of the award, release of documents, or administration"; the parties were "bound by a panel of arbitrators selected by the service"; and the designation of the American Health Lawyers Association "affect[ed] the substantive outcome of the resolution." *Id.* at 131-32, 678 S.E.2d at 439.  Wright and GGNSC, however, could vary rules under the NAF Code of Procedure, and they could select the arbitrator.  In addition, Wright has not demonstrated how a substitute arbitrator could substantively affect the outcome of this arbitration.

[¶23.] In this case, we find reliance on such cases misplaced. First, the penalty language in *Carr* applied to dispute resolutions in *any* forum other than the NAF. Therefore, that language effectively prohibited substitute arbitrations in other arbitral forums. In contrast, the penalty provision in this case applied only if a party resorted to a "lawsuit, administrative proceeding or other action." Clearly, substitute arbitration is not a lawsuit or administrative proceeding, and it is unclear whether the parties intended the phrase "other action" to include arbitration before a substitute arbitrator.[7] But even if the phrase "other action" could be interpreted to prohibit a non-NAF arbitration when the NAF was available, the parties could not have intended that penalty to apply to a substitute arbitration if the NAF became unexpectedly unavailable. After all, the parties agreed that the agreement would be governed by the FAA, and Section 5 of the FAA provided for the appointment of a substitute if the designated arbitrator failed.

[¶24.] We finally observe that "[w]hether the agreement to arbitrate is entire or severable turns on the parties' intent at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Great Earth Cos. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002). Therefore, courts

---

7. Because the phrase "other action" follows the words lawsuit or administrative proceeding, other actions may have been intended to be limited to actions similar to lawsuits or administrative proceedings, which would not include arbitration. *See generally State v. Douglas*, 70 S.D. 203, 212-13, 16 N.W.2d 489, 494 (1944) (applying the canon *noscitur a sociis*: "Where any particular word is obscure or of doubtful meaning, taken by itself, its obscurity or doubt may be removed by reference to associated words and the meaning of a term may be enlarged or restrained by reference to the whole clause in which it is used.").

have also looked to whether there is a "factual basis for the plaintiff's assertion that the specification of the [arbitration organization] was so material to the contract that it must fail if they are unavailable." *Owens v. Nat'l Health Corp.*, 263 S.W.3d 876, 886 (Tenn. 2007); *see also New Port Richey Med. Investors, LLC v. Stern ex rel. Petscher*, 14 So. 3d 1084, 1087 (Fla. Dist. Ct. App. 2009) (noting that the plaintiff "did not present any evidence in the circuit court that the choice of the AAA as the forum for any arbitration proceedings was an integral part of the agreement to arbitrate"); *Brown,* 211 F.3d at 1222 (finding "no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate"); *Zechman,* 742 F. Supp. at 1365 (stating that the parties may not have contemplated the CBOT arbitration mechanism).

[¶25.]     In this case, Lewellyn could not have intended the NAF Code to be integral to the agreement to arbitrate. Wright never raised the unavailability of the NAF Code as a defense. The circuit court raised the issue sua sponte after the matter had been fully litigated and briefed on Wright's other defenses. Because the NAF Code was not important to Lewellyn at the time he was litigating defenses to arbitration, it could not have not been important to him at the time he signed the arbitration agreement. *See Jones*, 684 F. Supp. 2d at 1168 (appointing a substitute arbitrator under an identical arbitration agreement in part because the testimony of the plaintiff did not suggest the NAF rules were integral to the plaintiff's decision to sign the arbitration agreement).

*Conclusion*

[¶26.]     The FAA embodies an emphatic federal policy in favor of arbitral dispute resolution. Additionally, the relevant cases hold that when a designated arbitral forum becomes unavailable, courts should appoint a substitute arbitrator under Section 5 unless it is clear that the designated forum was not an ancillary logistical concern but was as important a consideration as the agreement to arbitrate itself.

[¶27.]     In this case, there is nothing in the language of the agreement that suggests the NAF's Code of Procedure was as important as the agreement to arbitrate. On the contrary, the arbitration agreement was primarily concerned with the resolution of all disputes "exclusively by binding arbitration . . . and not by a lawsuit or resort to court process." This provision was emphasized in boldface type and in eighteen references to arbitrators and arbitration. Although the administrator of the designated code of procedure became unavailable, even one of Wright's primary authorities recognizes that designating an arbitral service and the rules to be applied does not alone make that designation integral to the agreement. *Carr*, 241 Ill. 2d at 30, 944 N.E.2d at 335. "If [that] were so, [S]ection 5 of the Arbitration Act would not apply in any case where the parties specif[ed] an arbitrator that later becomes unwilling or unable to handle the arbitration." *Id.*

[¶28.]     Further, this is not a case in which the record suggests that the experience of the NAF in the nursing home field was vital to the parties and no other arbitrator could perform the arbitration. *Cf. Salomon*, 68 F.3d 554. Our review of the Code reflects that any competent arbitrator could follow rules of

procedure like those in the NAF Code – rules similar to rules of civil procedure that attorneys routinely follow.  Even more importantly, a substitute arbitrator would be required to follow the same substantive law that would have been applied if the NAF Code were available.  Under these circumstances, we conclude that designation of the NAF's Code of Procedure was an ancillary logistical concern that was not as important to the agreement as the agreement to arbitrate.  Therefore, the appointment of a substitute arbitrator was required under Section 5 of the FAA.

[¶29.]      Reversed and remanded for the appointment of a substitute arbitrator.[8]

[¶30.]      GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

8.    The circuit court's decision was based solely on the unavailability of the NAF. The court did not reach Wright's other pending defenses to arbitration.  Our decision does not preclude the circuit court's consideration of those other defenses on remand.