Judy Riley, Individually and as surviving spouse and personal representative of the Estate of Carl Riley, Plaintiff-Respondent,

Michael O. Leavitt, Secretary of the U.S. Department of Health and Human Services, and Kevin R. Hayden, Secretary of the State of Wisconsin Department of Health and Family Services, Involuntary-Plaintiffs,

v.

Extendicare Health Facilities, Inc. d/b/a Beloit Health and Rehab Center, Extendicare Health Services, Inc. and Laurier Indemnity Company, Defendants-Appellants.†165

Court of Appeals

*No. 2012AP311. Submitted on briefs September 10, 2012.
—Decided December 27, 2012.*

2013 WI App 9

(Also reported in 826 N.W.2d 398.)

† Petition for Review filed February 22, 2013.

807

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Robert D. Ebbe* and *David J. Pliner* of *Corneille Law Group, LLC*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James P. Scoptur* and *Timothy J. Aiken* of *Aiken & Scoptur, S.C.*, Milwaukee.

Before Lundsten, P.J., Sherman and Kloppenburg, JJ.

¶ 1. KLOPPENBURG, J. In July 2009, Minnesota's Attorney General filed a complaint against the National Arbitration Forum ("NAF"), a third-party arbitration service, alleging fraud and challenging NAF's suspect ties to the consumer loan and debt collection industries. Shortly after the lawsuit was filed, NAF entered into a consent judgment in which it agreed not to administer, process, or in any manner participate in any new consumer arbitration on or after July 24, 2009. After NAF exited the consumer-arbitration business, questions concerning the proper interpretation of contracts mandating NAF arbitration or invoking NAF's rules and procedures have arisen in courts across the country.

¶ 2. This case concerns one such contract. Extendicare Health Facilities, Inc., Extendicare Health Services, Inc., and Laurier Indemnity Company (collec

tively "Extendicare") appeal the circuit court's nonfinal order[1] denying their motion to stay proceedings and compel arbitration. Extendicare argues that the parties' Alternative Dispute Resolution Agreement ("ADR Agreement") mandating arbitration is enforceable. Specifically, Extendicare contends that the ADR Agreement's designation of NAF and its Rules of Procedure is not an integral term to the contract and thus NAF's unavailability does not make the ADR Agreement unenforceable. For the following reasons, we agree with the circuit court's conclusion that the parties' designation of an exclusive arbitration forum that is no longer available renders the ADR Agreement unenforceable and, therefore, we affirm.

## BACKGROUND

¶ 3. On June 3, 2010, Carl Riley, the husband of plaintiff Judy Riley,[2] was admitted to Beloit Health and Rehabilitation Center, an Extendicare facility. After Carl Riley was admitted that day, an office assistant from the Center discussed with Judy Riley the option of signing an ADR Agreement. Judy Riley signed the ADR Agreement as legal representative and guardian for Carl Riley.

¶ 4. The ADR Agreement provides that "any disputes . . . that may arise between the Parties shall be resolved exclusively by an Alternative Dispute Resolu-

[1] On March 7, 2012, this court granted leave to appeal the nonfinal order. *See* WIS. STAT. RULE 809.50(3) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise stated.

[2] In addition, Michael O. Leavitt, Secretary of the United States Department of Health and Human Services, and Kevin R. Hayden, Secretary of the State of Wisconsin Department of Health and Family Services, are named as involuntary plaintiffs in this case.

tion process that shall be binding arbitration." Covered disputes include "any and all disputes . . . that would constitute a legally cognizable cause of action in a court of law." Paragraph six of the ADR Agreement addresses NAF's involvement in any potential arbitration between the parties:

> The National Arbitration Forum (NAF) shall serve as any arbitrator of any dispute. In the event that NAF is unable or unwilling to serve, the parties shall select an alternative neutral arbitration service within thirty (30) days after receipt of notice by NAF of such. Regardless of the entity chosen to be Administrator, unless the Parties mutually agree otherwise in writing, the Alternative Dispute Resolution process shall be conducted in accordance with the NAF Rules and Code of Procedure (hereinafter, collectively "NAF Rules of Procedure") then in effect. This process shall include but not be limited to the selection of the Arbitrator and location of the Arbitration as set out in the NAF Rules of Procedure.

¶ 5. Rule 1.A. of the NAF Rules of Procedure provides: "This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum."

¶ 6. Carl Riley passed away on June 29, 2010. On January 26, 2011, Judy Riley, individually and as the surviving spouse and personal representative of the Estate of Carl Riley, filed a civil action against various Extendicare entities. Specifically, she brought claims for negligence per se, negligence, breach of contract, and wrongful death. In response, Extendicare moved to stay the circuit court proceedings and compel enforcement of the ADR Agreement requiring arbitration.

¶ 7. Riley opposed Extendicare's motion, arguing that the ADR Agreement is void and unenforceable because NAF no longer engages in consumer arbitration and because the ADR Agreement is unconscionable. Extendicare replied that the ADR Agreement allows for a substitute arbitrator if NAF is unavailable, and the substitute arbitrator could apply NAF"s Rules of Procedure. Extendicare further replied that even if the ADR Agreement's NAF provisions are unenforceable, the ADR Agreement's severability clause allows for severance of the unenforceable, non-essential terms and the remainder of the ADR Agreement could be enforced. Finally, Extendicare contested Riley's allegation of unconscionability.

¶ 8. The circuit court denied Extendicare's motion to stay the proceedings and compel enforcement of the ADR Agreement. At the January 19, 2012 hearing on the motion, the court explained that while a successor arbitrator can be appointed—either by the court or, under the ADR Agreement's language, upon agreement of the parties—the ADR Agreement still requires use of NAF"s Rules of Procedure. The court reasoned:

> [E]ven if you change the umpire, you still have to use the same strike zone. And the strike zone [is] the NAF rules of procedure and the code of procedure. And I'm not too sure that part of the reason that the NAF and its consent decree eliminated the NAF in consumer actions is because not only the NAF but its rules ... were part of its problem . . . . I don't think it makes any sense for the circuit court in any jurisdiction to have to blue pencil those rules of procedure of the NAF to figure out which ones are going to fly and which ones don't, and which ones seem hard or unfair, and basically redraft them.
>
> . . . .

811

... I could come up with another arbitrator right now, but I can't give that arbitrator these rules.

¶ 9. With respect to Extendicare's severability argument, the circuit court explained that "paragraph six is so inextricably interwoven in its language connecting the NAF, NAF rules and code of procedure" that severance cannot occur. In other words, the circuit court found that the language "the alternative dispute resolution process shall be conducted in accordance with the NAF rules and code of procedures" is a "key provision" that cannot be severed. Because the court denied the motion on these grounds, it did not rule on the issue of unconscionability. Extendicare petitioned this court for leave to appeal, which we granted.

## DISCUSSION

¶ 10. On appeal, Extendicare asserts that NAF's unavailability does not render the ADR Agreement unenforceable, as its language and the Wisconsin Arbitration Act allow for use of a substitute arbitrator. Nor, according to Extendicare, is the ADR Agreement unenforceable because the required use of NAF rules is not integral to the agreement and is therefore severable. Finally, Extendicare argues that the ADR Agreement is neither procedurally nor substantively unconscionable. We will address each argument in turn.

¶ 11. This case involves issues of contract interpretation and arbitrability, questions of law that we review de novo. *Cirilli v. Country Ins. & Fin. Servs.*, 2009 WI App 167, ¶ 10, 322 Wis. 2d 238, 776 N.W.2d 272.

## I. Enforceability of the ADR Agreement.

¶ 12. The ADR Agreement states that "[t]his Agreement shall be governed by the terms of State law related to enforceability of Agreements of this type, if any is in existence."[3] WISCONSIN STAT. ch. 788, commonly referred to as the Wisconsin Arbitration Act, is the governing state law related to the enforceability of arbitration agreements. *See generally* WIS. STAT. ch. 788. The Wisconsin Arbitration Act provides that "[a] provision in any written contract to [arbitrate] . . . shall be valid, irrevocable and enforceable except upon such grounds as exist at law or in equity for the revocation of any contract." WIS. STAT. § 788.01. The Wisconsin Arbitration Act is patterned after the Federal Arbitration Act, which contains a similar provision mandating the validity and enforceability of such agreements, along with the exception for contract defenses. *See* 9 U.S.C. § 2; *see also Madison Teachers, Inc. v. Wisconsin Educ. Ass'n Council*, 2005 WI App 180, ¶ 10, 285 Wis. 2d 737, 703 N.W.2d 711 (noting that the Wisconsin Arbitration Act is patterned after the Federal Arbitration Act).

¶ 13. It is well established that arbitration is a matter of contract. *See Joint School Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 101, 253 N.W.2d 536 (1977). When construing contracts that were freely entered into, our goal "is to ascertain the true intentions of the parties as expressed by the contractual language." *State ex rel. Journal/Sentinel, Inc. v. Pleva,*

---

[3] The ADR Agreement further states that "[i]f for any reason there is a finding that State law cannot support the enforcement of this Agreement, then the Parties agree to resolve their disputes by arbitration . . . pursuant to the Federal Arbitration Act (9 U.S.C. Sections 1–16)."

155 Wis. 2d 704, 711, 456 N.W.2d 359 (1990). The best indication of the parties' intent is the language of the contract itself, for that is the language the parties saw fit to use. *Town Bank v. City Real Estate Dev., LLC*, 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476.

■■

¶ 14. The principal purpose of the Federal and Wisconsin Arbitration Acts is to require courts to enforce arbitration agreements "according to their terms." *See Rivera v. American Gen. Fin. Servs.*, 2011–NMSC-033, ¶ 26, 259 P.3d 803 (quoting *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). When one particular term of an arbitration agreement has failed, courts look to the parties' intent to determine "whether a substituted term should be inserted or whether the agreement will fail altogether." *Madison Teachers*, 285 Wis. 2d 737, ¶ 12.

■

¶ 15. The Wisconsin Arbitration Act allows for judicial appointment of an arbitrator when the arbitrator specifically named in the agreement is no longer available:

> If no method is provided in the agreement, or if a method is provided and any party thereto fails to make use of the method, or if for any other reason there is a lapse in the naming of an arbitrator or arbitrators or an umpire, or in filling a vacancy, then upon the application of either party to the controversy, the court specified in s. 788.02 or the circuit court for the county in which the arbitration is to be held shall designate and appoint an arbitrator, arbitrators or umpire, as the case or sub. (2) may require, who shall act under the agreement with the same force and effect as if specifically named in the agreement . . . .

Wis. Stat. § 788.04(1). In other words, under § 788.04, the circuit court has the authority under certain circumstances to designate or appoint an arbitrator of its own choosing. *Employers Ins. of Wausau v. Jackson*, 190 Wis. 2d 597, 616, 527 N.W.2d 681 (1995). Section 5 of the Federal Arbitration Act contains a parallel provision mandating judicial appointment of a substitute arbitrator. 9 U.S.C. § 5.

¶ 16. Wisconsin case law has examined the court's authority to appoint an arbitrator and whether an agreement is enforceable when the named arbitrator is unavailable. *See Employers Ins.*, 190 Wis. 2d at 615–16 (finding the circuit court had authority under Wis. Stat. § 788.04 to appoint an arbitrator when parties were deadlocked and failed to make timely appointment under the procedure set forth in the arbitration agreement); *Madison Teachers*, 285 Wis. 2d 737, ¶ 15 (concluding the primary purpose of the agreement was to arbitrate disputes, and thus when the named arbitrator—a specific individual, Professor Ronald W. Haughton—was unavailable due to age or infirmity, the agreement remained enforceable).

¶ 17. However, these cases did not involve arbitration clauses in which the parties also designated specific governing rules, which themselves governed both the selection of the arbitrator and the arbitration process. Moreover, the particular predicate here, NAF's unavailability, is the result of a unique situation that has been the subject of litigation across the country in the last three years. Accordingly, we look to recent decisions from other jurisdictions which, in endeavoring to discern the parties' intent, have addressed the effect of NAF's unavailability—resulting from the Minnesota consent judgment—on arbitration agreements containing various versions of forum selection language.

815

¶ 18. In determining whether to appoint an arbitrator under section 5 of the Federal Arbitration Act,[4] most courts have focused on whether the forum selection clauses are "integral" or merely an "ancillary logistical concern" to the arbitration agreement. *See Khan v. Dell Inc.*, 669 F.3d 350, 354 (3rd Cir. 2012) (citing *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060 (9th Cir. 2006) (*overruled on other grounds as recognized in Atlantic Nat'l Trust LLC v. Mt. Hawley Ins. Co.*, 621 F.3d 931, 940 (9th Cir. 2010))); *see, e.g., Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000); *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F. Supp. 2d 966, 974 (D. Minn. 2012); *Diversicare Leasing Corp. v. Nowlin*, No. 11–CV–1037, 2011 WL 5827208, at *5 (W.D. Ark. Nov. 18, 2011); *Klima v. Evangelical Lutheran Good Samaritan Soc.*, No. 10–cv–1390–JAR–JPO, 2011 WL 5412216, at *3 (D. Kan. Nov. 8, 2011); *Ranzy v. Extra Cash of Texas, Inc.*, No. H-09–3334, 2010

___

[4] As explained in *Employers Ins.*, 190 Wis. 2d at 611 n.5:

[T]he federal statutes on arbitration are substantively identical to the Wisconsin statutes on arbitration. Sections 788.03 and 788.04 ... are patterned after sections 4 and 5 of the [FAA] respectively. Thus, although our review involves only a consideration of the Wisconsin statutes on arbitration, nonetheless, we may also consider federal court interpretations of the federal statutes on arbitration as an aid in the resolution of this case.

In other words, federal cases interpreting federal law identical to state law, like the Federal Arbitration Act and WIS. STAT. §§ 788.03 and 788.04, are persuasive authority. *See Sands v. Menard, Inc.*, 2010 WI 96, ¶ 55 n.27, 328 Wis. 2d 647, 787 N.W.2d 384 (citing *Diversified Mgmt. Servs., Inc. v. Slotten*, 119 Wis. 2d 441, 446, 351 N.W.2d 176 (Ct. App. 1984)) (noting that federal cases construing the federal act are persuasive authority for interpretation of the state statute, and that state court decisions often have persuasive value as well, given the similar analytical framework among states).

WL 936471, at *4–5 (S.D. Tex. March 11, 2010); *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359, 1364 (N.D. Ill. 1990); *Carr v. Gateway, Inc.,* 944 N.E.2d 327, 333 (Ill. 2011); *Geneva-Roth, Capital, Inc. v. Edwards,* 956 N.E.2d 1195, 1202–03 (Ind. Ct. App. 2011); *Rivera,* 259 P.3d 803, ¶ 26; *Stewart v. GGNSC-Canonsburg, L.P.,* 2010 PA Super 199, 9 A.3d 215, 218–19; *Wright v. GGNSC Holdings LLC,* 2011 SD 95, ¶ 14, 808 N.W.2d 114; *see also Madison Teachers,* 285 Wis. 2d 737, ¶ 10 (the question is whether having a specific arbitrator is "as important a consideration as the agreement to arbitrate itself" (citation omitted)).

¶ 19. Under the integral-versus-ancillary test, a court must decline to appoint a substitute arbitrator if the parties' choice of arbitrator is " 'so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end.' " *Khan,* 669 F.3d at 354 (quoting *Reddam,* 457 F.3d at 1061). Conversely, if the choice of arbitrator is a mere ancillary logistical concern, then the court should appoint a substitute arbitrator pursuant to section 5 or, in this case, Wis. Stat. § 788.04. *See Wright,* 808 N.W.2d 114, ¶ 14.

¶ 20. As evidenced by the multitude of cases referenced, the integral-versus-ancillary inquiry is the generally accepted method for analyzing section 5's application. *Id.*[5] The integral-versus-ancillary test is consistent

---

[5] Under an alternative approach, courts look to whether exclusive designation of an arbitrator or arbitration forum is "tantamount to a forum selection clause." *Wright,* 808 N.W.2d 114, ¶ 14 n.4 (citing *Weiner v. Gutfreund (In re Salomon Inc. S'holders' Derivative Litig.),* 68 F.3d 554 (2d Cir. 1995)). Under this analysis, section 5 is inapplicable when the specifically named arbitrator becomes unavailable. In cases using this approach, "the particularized expertise of the designated arbi-

with state law principles of contract, which require courts to give effect to the parties' intent at the time the parties entered into the contract. *See Rivera*, 259 P.3d 803, ¶ 26 (noting that the test is consistent with New Mexico's general principles of contract law); *Seitzinger v. Community Health Network*, 2004 WI 28, ¶ 22, 270 Wis. 2d 1, 676 N.W.2d 426 ("[t]he primary goal in contract interpretation is to give effect to the parties' intentions"); *see also Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶ 21, 342 Wis. 2d 29, 816 N.W.2d 853 ("When we interpret contracts, we do so to determine and give effect to the intentions of the parties"). The integral-versus-ancillary test is also consistent with the purpose of the federal and state arbitration statutes to require courts to enforce arbitration agreements according to their terms. *Geneva-Roth*, 956 N.E.2d at 1202; *Rivera*, 259 P.3d 803, ¶ 26.

¶ 21. In applying the integral-versus-ancillary test to the parties' forum selection provisions, courts have focused on the exclusive nature of the provisions relating to the designation of the arbitrator and of the rules governing the arbitration process.

¶ 22. When the parties have named an exclusive arbitration provider, some courts have concluded that such a selection was integral to the agreement. *See, e.g., Carideo v. Dell, Inc.*, No. C06–1772JLR, 2009 WL 3485933, at *5 (W.D. Wash. Oct. 26, 2009); *Carr*, 944

---

trator or the unique location of the arbitral forum [is] critical to the arbitration agreement." *Wright*, 808 N.W.2d 114, ¶ 14 n.4. For example, in *In re Salomon*, the parties to a Wall Street securities dispute had designated the New York Stock Exchange as the arbitral forum. 68 F.3d at 555. The court found the forum selection clause was "as important a consideration as the agreement to arbitrate itself." *Id.* at 561 (citation omitted). The parties in this case have not advocated for application of this approach.

N.E.2d at 333–36. In *Carideo*, a federal district court analyzed an arbitration clause in which the parties named a single arbitration provider and did not provide for an alternative arbitral forum: "any claim . . . shall be resolved exclusively and finally by binding arbitration administered by the National Arbitration Forum (NAF) under its Code of Procedure then in effect." 2009 WL 3485933, at *1 n.2 (emphasis removed). The *Carideo* court determined that the arbitration clause's language clearly and unequivocally selected NAF as the sole arbitrator and so the "selection of NAF [was] not merely an implicit choice, but rather an express one." *Id*. Thus, the court found the selection of NAF integral to the arbitration clause, and that, therefore, appointment of a substitute arbitrator under section 5 would "constitute a wholesale revision of the arbitration clause." *Id*. at *6.

¶ 23. Similarly, in *Carr*, the Illinois Supreme Court concluded that the language used by the parties—use of the word "exclusively" and a penalty provision for failing to use NAF as an arbitrator—showed the parties' intent that NAF as the arbitrator was integral to the agreement to arbitrate. *Carr*, 944 N.E.2d at 336–37; *but see Khan*, 669 F.3d at 355 and *Adler v. Dell Inc.*, No. 08–cv–13170, 2009 WL 4580739, at *2–3 (E.D. Mich. Dec. 3, 2009) (both cases finding the term "exclusively" to be ambiguous as it could be read to modify "binding arbitration," "the National Arbitration Forum" or both, and ultimately resolving that ambiguity in favor of arbitration).

¶ 24. Even without express use of the term "exclusively," the Indiana Supreme Court found the following provision integral to the agreement: "any claim . . . *shall* be resolved by binding arbitration *by and under* the Code of Procedures of the [NAF]." *Geneva-Roth*, 956 N.E.2d at 1197 (emphasis added). The *Geneva-Roth* court reasoned that the arbitration clause still specifi-

cally named NAF as the single arbitration provider and used mandatory language such as "shall." *Id.* at 1202–03.

¶ 25. The case before us presents language like that in *Geneva-Roth*: a non-exclusive arbitrator designation clause and a clause mandating use of the NAF Rules of Procedure. If the Riley-Extendicare ADR Agreement contained only a non-exclusive arbitrator designation clause, that clause would by itself indicate that the parties contemplated use of a substitute arbitrator. However, the agreement contains an additional provision mandating use of the NAF Rules of Procedure, which govern the selection of the arbitrator and require administration only by NAF. These two clauses—the arbitrator designation clause and the clause mandating use of the NAF rules—indicate that the parties intended to arbitrate exclusively before NAF, and work together to make selection of NAF integral to the ADR Agreement. As we explain below, in light of the Minnesota consent judgment barring NAF from such arbitration, the ADR Agreement is unenforceable in NAF's absence.

¶ 26. Courts upholding arbitration agreements similar to that in the present case have focused on who could act as arbitrator. Courts invalidating similar arbitration agreements have focused on the NAF rules requirement regardless who arbitrates. *Wright* and *Meskill* fall into the former camp.[6] *Rivera, Klima, Carideo, Stewart, Ranzy, Geneva-Roth*, and *Carr* all fall into the latter.

---

[6] *See also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217 (11th Cir. 2000) (a pre-Minnesota consent judgment case in which the court ("[w]ith little analysis," *Geneva-Roth*, 956 N.E.2d at 1202) focused solely on the choice of forum and did not examine whether the impossibility of using the mandated NAF rules resulted in a failure that precluded arbitration).

¶ 27. *Wright* involved an arbitration agreement between a nursing home and its former patient's estate, which stated: "all claims . . . shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum Code of Procedure." 808 N.W.2d 114, ¶ 3 n.1. Wright argued that NAF's unavailability barred arbitration, that section 5 of the Federal Arbitration Act did not apply because the NAF Rules of Procedure were integral to the arbitration agreement, and that the NAF rules could not be applied by a substitute arbitrator. *Id.*, ¶ 13. The South Dakota Supreme Court disagreed. *Id.*, ¶ 16. The court found that the NAF Rules of Procedure did not require the appointment of a NAF arbitrator, nor did the portion of the rules governing selection of arbitrators restrict who could act as an arbitrator. *Id.*, ¶ 17. The *Wright* court acknowledged that "the NAF rules did provide that only the NAF could 'administer' its Code of Procedure." *Id.*, ¶ 19. However, it found this point to be of little significance, because "the NAF Code reflects that NAF administration involved what is commonly provided by many arbitration services available today." *Id.* The *Wright* court also found that the NAF Rules of Procedure did not preclude a substitute arbitrator in a non-NAF administered arbitration from using the same substantive law and procedural rules as would have been applied under the NAF rules. *Id.*, ¶ 17.

¶ 28. Relying on *Wright*, Extendicare argues that the ADR Agreement's designation of the NAF Rules of Procedure is not integral to the agreement because a non-NAF arbitrator could apply the NAF rules. Extendicare's reliance on *Wright* is misplaced. First, the parties in that case never raised the unavailability of NAF and the NAF Rules of Procedure as a defense, but the court raised the issue sua sponte after the matter

had been fully litigated and briefed on other defenses. *Id.*, ¶ 25. Substantively, in *Wright* the court concluded that any arbitrator could administer the public rules governing arbitration in place of the NAF rules. *Id.*, ¶ 21. However, that is not what the parties in *Wright* said in their agreement, and the court's decision essentially rewrote the agreement to insert: "or in accordance with public state rules where NAF rules cannot be applied."

¶ 29. We decline to follow *Wright*, because Wisconsin contract law does not allow courts to similarly rewrite an ADR agreement. *See Columbia Propane, L.P. v. Wisconsin Gas Co.*, 2003 WI 38, ¶ 12, 261 Wis. 2d 70, 661 N.W.2d 776 (stating the general contract law principle that "[i]n constructing a contract, 'courts cannot insert what has been omitted or rewrite a contract made by the parties.' " (citation omitted)). Under Wisconsin law, if the NAF Rules of Procedure cannot be administered, the fact that the parties or the court can appoint a non-NAF arbitrator does not make the clause requiring use of the NAF rules less integral to an ADR agreement, or save an ADR agreement.

¶ 30. *Meskill* involved another dispute between a nursing home and a former patient concerning an arbitration provision identical to that examined in *Wright*. *Meskill*, 862 F. Supp. 2d at 969 ("all claims . . . shall be resolved exclusively by binding arbitration . . . in accordance with the National Arbitration Forum [Rules] of Procedure"). The court first noted that "[o]n its face, this provision does not mandate that the NAF actually *conduct* the arbitration – it requires only that the NAF [Rules of Procedure] be *applied* by the arbitrator." *Id.* at 972 (emphasis in original). After examining the specific rules provisions submitted by Meskill,

the court found that the rules contained "nothing therein so unique to suggest that, by selecting that [rule], the parties implicitly designated the NAF due to some particular expertise it held." *Id.* at 973. The court concluded that the designation of the NAF Rules of Procedure was not integral to the agreement. *Id.* at 975. However, the decision in *Meskill* concerned an agreement that mentioned NAF only once and contained no express designation of NAF as the arbitrator. Thus, *Meskill* does not help us analyze the very different agreement here.

¶ 31. In contrast to *Wright* and *Meskill*, the New Mexico Supreme Court—relying on an agreement's pervasive references to NAF, the selection of and language in the NAF Rules of Procedure, and the mandatory language of the agreement—concluded that the unavailability of NAF rendered an arbitration agreement unenforceable. *Rivera*, 259 P.3d 803, ¶¶ 33–34, 57. With regard to specific NAF Rules of Procedure provisions, the *Rivera* court noted that the rules incorporate themselves by reference into every arbitration agreement. *Id.*, ¶ 33. Moreover, the NAF Rules of Procedure govern "the manner in which claims can be brought, the selection and powers of the arbitrator, the type of hearing afforded to the parties, the entry of a final binding order by the arbitrator, and the payment of fees by the parties." *Id.* (internal citations omitted). In addition, the court cited the arbitration agreement's mandatory, rather than permissive, language: " '[a]rbitration *will* be conducted under the rules and procedures of' the NAF." *Id.*, ¶ 34.

¶ 32. The court in *Klima*, 2011 WL 5412216, also determined that designation of the NAF Rules of Procedure was integral to the parties' agreement to arbitrate. The District Court of Kansas noted the NAF rule

requiring that any arbitration using the NAF Rules of Procedure " 'shall be administered only by [NAF] or by any entity or individual providing administrative services by agreement with the [NAF].' " *Id.* at *4. While neither party in *Klima* indicated whether a substitute arbitrator could conduct the arbitration under the NAF rules, the court explained that "the fact that the rules are restricted for use only by NAF or entities and individuals providing arbitral services by agreement with the NAF suggests that in explicitly selecting the NAF Code of Procedure, the parties exclusively selected the NAF to administer those procedures." *Id.*

¶ 33. In addition to *Rivera* and *Klima*, other courts have found that the NAF Rules of Procedure provisions requiring the use of the NAF rules only by NAF arbitrators make the agreement unenforceable upon NAF's unavailability. *See Carr*, 944 N.E.2d at 336 (noting that the requirement that the NAF rules be administered only by NAF or by an entity or individual in agreement with NAF "militates in favor of a finding that the designation of the NAF and its rules was integral to the parties' agreement to arbitrate"); *see also Carideo*, 2009 WL 3485933, at *4–6; *Stewart*, 9 A.3d at 219–21.

¶ 34. As the cases reflect, whether the designation of the NAF Rules of Procedure renders an arbitration agreement unenforceable upon NAF's unavailability depends on the language used in the arbitration agreement and the specific provisions contained in the applicable NAF rules. We return now to the Riley-Extendicare ADR Agreement at issue in this case, and demonstrate how the application of the foregoing law to the language used makes the ADR Agreement unenforceable.

¶ 35. The Riley-Extendicare ADR Agreement states the following:

> Regardless of the entity chosen to be Administrator, unless the Parties mutually agree otherwise in writing, the Alternative Dispute Resolution process shall be conducted in accordance with the NAF Rules and Code of Procedure (hereinafter, collectively "NAF Rules of Procedure") then in effect. This process shall include but not be limited to the selection of the Arbitrator and location of the Arbitration as set out in the NAF Rules of Procedure.

¶ 36. We note at the outset that the parties use the term "shall" when designating the NAF Rules of Procedure as the governing procedural rules. As discussed by other courts, the repeated use of mandatory, not permissive, language demonstrates the parties' specific intent to use the NAF Rules of Procedure, as well as their intent that NAF is integral to the arbitration agreement. *Ranzy*, 2010 WL 936471, at *5; *Geneva-Roth*, 956 N.E.2d at 1203; *Rivera*, 259 P.3d 803, ¶ 31.

¶ 37. The NAF Rules of Procedure, in turn, confirm that the Riley-Extendicare ADR Agreement's designation of the application of the NAF rules is integral to that agreement. The NAF Rules of Procedure make clear the centrality of NAF to the ADR Agreement and to the NAF rules from the start.[7] Rule 1.A. provides: "This Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to the

---

[7] The parties do not dispute that the current code applies. Riley attached the current version of the NAF Code of Procedure to her Brief in Opposition to Extendicare's Motion to Compel Enforcement of the ADR Agreement, which is included in the record on appeal. *See also* Code of Procedure, National Arbitration Forum, August 1, 2008, *available at* http://www.adr forum.com/users/naf/resources/CodeofProcedure2008–print2.pdf.

National Arbitration Forum . . . unless the Parties agree otherwise. This Code shall be administered only by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." This provision excludes a non-NAF arbitrator or administrator.

¶ 38. A significant problem in applying the NAF Rules of Procedure in the absence of NAF is the fee schedule imposed by the rules. The NAF rules conclude by setting a fee schedule that presumably reflects NAF's costs and experience (such as the opening Administrative Fee, defined as "[t]he fee assessed by the Forum for its case work"). It would be unreasonable to impose that fee schedule on the parties because such fees would not be based on actual costs of non-NAF arbitrators and non-NAF administrators—rather these substantial fees would essentially be arbitrary.

¶ 39. NAF is referenced multiple times on almost every page of the rules' sixty-seven pages. The Rules of Procedure require that the consumer file the claim with NAF, which then reviews the claim and notifies the parties that a claim has been accepted (Rules 5–6). NAF schedules hearings in accordance with the fee schedule (Rules 25–26). In absence of the parties' agreement as to the process for selecting an arbitrator, NAF provides a list of arbitrator candidates, and NAF designates the chair where a panel of arbitrators presides (Rules 21–22). Only NAF may extend time periods (Rule 9). These and other provisions contemplate that performance is expected and requirements are interpreted based on NAF's experience. These provisions contemplate no role for non-NAF arbitrators and administrators with any different experience.

¶ 40. These provisions substantially affect the substantive outcome of the dispute resolution—in particular, their implications concerning the arbitrator selection process, the enforcement of the arbitral award, and the cost of the arbitration. Given the pervasive intertwining of the NAF Rules of Procedure with the dispute resolution process prescribed by the ADR Agreement, we conclude that the parties' designation of the NAF Rules of Procedure is integral to the parties' agreement to arbitrate. *See Rivera*, 259 P.3d 803, ¶ 30 (quoting *Grant v. Magnolia Manor-Greenwood, Inc.*, 678 S.E.2d 435, 439 (S.C. 2009) ("where the designation of a particular set of rules 'has implications that may substantially affect the substantive outcome of the resolution,' the parties' selection of those rules is integral to the agreement to arbitrate")).

¶ 41. Moreover, even if the court were to appoint a substitute arbitrator, no applicable NAF rules exist for the substitute arbitrator to apply. *See Carr*, 944 N.E.2d at 335–36 (noting that it is unclear whether a substitute arbitrator could use the NAF rules). The NAF rules in the record are dated August 1, 2008. NAF stopped accepting new consumer arbitrations after July 24, 2009. As noted in both *Rivera* and *Carideo*: "[B]ecause NAF does not arbitrate consumer disputes filed after July 24, 2009, there are simply no NAF rules currently in effect for such arbitrations." *Rivera*, 259 P.3d 803, ¶ 35 (quoting *Carideo*, 2009 WL 3485933, at *5).

¶ 42. We acknowledge, as other courts have, that " 'the mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement.' " *Geneva-Roth*, 956 N.E.2d at 1200 (quoting *Carr*, 944 N.E.2d at 335). Otherwise, as the

827

*Carr* court noted, section 5 of the FAA would never apply where parties specify a particular forum in their agreement. *See Carr*, 944 N.E.2d at 335. But, NAF is not just any arbitrator and its rules are not just any rules—both were discredited and invalidated by the Minnesota consent judgment.

¶ 43. That the NAF Rules of Procedure are restricted by their terms for use only by NAF or entities providing arbitration services by agreement with NAF, suggests that in explicitly selecting the NAF Rules of Procedure, the parties exclusively selected NAF to administer the arbitration procedures. By incorporating the NAF Rules of Procedure, the ADR Agreement confirms that the parties intended to use NAF exclusively. As the court found in *Stewart*:

> [T]he parties expressly agreed to two fundamental terms in the arbitration agreement that were unenforceable . . . . (1) that the law governing the arbitration proceedings would be the NAF Code, and (2) that under the NAF Code, the arbitrators would be members of the NAF, who are the *only* people authorized to administ[er] and apply the NAF Code. Consequently, with the unavailability of NAF, both provisions designating the arbitrators themselves (the NAF), and the rules of the arbitration forum (the NAF Code) could not be enforced.

9 A.3d at 220 (emphasis in original).

¶ 44. After careful review of the ADR Agreement's terms and the NAF Rules of Procedure's provisions, we conclude in this case that the designation of NAF and its rules is integral to the ADR Agreement. The NAF Rules of Procedure, incorporated by reference into the ADR Agreement, are pervasive in that they govern all aspects of the arbitration. The mandatory language designating use of NAF's rules draws NAF into the Agreement to a

degree as integral as the agreement to arbitrate itself. Finding persuasive the approaches taken in *Carideo, Carr, Ranzy, Rivera,* and *Stewart,* we conclude that the designation of NAF is integral to the ADR Agreement. As we explain in the next section, in light of the Minnesota consent judgment barring NAF from consumer arbitration, we also conclude that the ADR Agreement "fail[s] altogether." *See Madison Teachers,* 285 Wis. 2d 737, ¶ 12.

## II. Severability of NAF Provisions.

■

¶ 45. Extendicare argues that any unenforceable provisions may be severed, because the ADR Agreement contains a severance clause that would allow for enforcement of the remainder of the Agreement.[8] However, like Riley, we rely on *Stewart* for the notion that "[b]efore a court can sever a contractual provision from a contract, it must first determine whether the severed provision 'is integral to the entire contract.' " 9 A.3d at 220 (quoting *John R. Ray & Sons, Inc. v. Stroman,* 923 S.W.2d 80, 87 (Tex. App. 1996)). *See also Schara v. Thiede,* 58 Wis. 2d 489, 495, 206 N.W.2d 129 (1973) (condoning severability only when it "will not defeat the primary purpose of the bargain" (citation omitted)).

■ ■

¶ 46. Where a failed forum selection provision "is as important a consideration as the agreement to arbi-

---

[8] Paragraph 8 of the ADR Agreement states: "If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable in whole or in part the remainder of this Agreement, including all valid and enforceable parts of the provision in question, shall remain valid, enforceable, and binding on the Parties."

trate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail." *Zechman*, 742 F. Supp. at 1364. Here, we have already concluded that the designation of NAF is integral to the ADR Agreement. Thus, we decline to "rewrite [the] arbitration agreement and insert additional terms to replace an unenforceable provision that was integral to the agreement. Sanctioning this type of action would run contrary to the clear intent of the parties as expressed by the plain language of the Agreement itself." *Stewart*, 9 A.3d at 221.

¶ 47. We further note that even if the NAF provisions were severable, the contract would be left without an arbitrator or a set of rules, requiring the court to rewrite substantial portions of the agreement not contemplated by the parties, and to devise a new form and mode of arbitration for the parties. *See Klima*, 2011 WL 5412216, at *5; *Rivera*, 259 P.3d at 815 ("Given the number of references to the NAF . . . and the substantial reliance on the NAF *Code of Procedure* throughout the contract, we could not sever the unenforceable terms of the arbitration provisions without substantially rewriting the contract. Where the NAF involvement in the arbitration provisions is so integral to the agreement itself, for us to change those core provisions would violate our duty to enforce the agreement according to its terms" (emphasis in original)); *Stewart*, 9 A.3d at 221 ("this Court will not rewrite an arbitration agreement and insert additional terms to replace an unenforceable provision that was integral to the agreement. Sanctioning this type of action would run contrary to the clear intent of the parties as expressed by the plain language of the Agreement itself"). The circuit court aptly noted that it is nonsensical to "blue pencil those rules of procedure of the NAF to figure out which

ones are going to fly and which ones [won't]." Therefore, we conclude that the severance clause does not save the ADR Agreement.

### III. Unconscionability of the ADR Agreement.

¶ 48. Having concluded that the ADR Agreement is not enforceable, we need not address the parties' arguments concerning unconscionability. Even if we found the ADR Agreement was enforceable, we would still decline to rule on the issue of unconscionability, because we agree with the circuit court's assessment that the factual record is inadequate on that issue. Thus, the record remains inadequate for our review. For this reason, we decline to rule on the issue of unconscionability.

### CONCLUSION

¶ 49. We affirm the circuit court's denial of Extendicare's Motion to Stay Proceedings and Compel Enforcement of the ADR Agreement.
*By the Court.*—Order affirmed.